STATE OF CONNECTICUT *v.* RANDALL BROWN
(SC 17891)

Rogers, C. J., and Norcott, Katz, Palmer, Vertefeuille, Zarella and McLachlan, Js.*

---

* The listing of the justices reflects their seniority status on this court as of the date of oral argument.

Argued February 9, 2010—officially released January 5, 2011**

*Richard E. Condon, Jr.*, assistant public defender, for the appellant (defendant).

---

** January 5, 2011, the date that this decision was released as a slip opinion, is the operative date for all substantive and procedural purposes.

*Rita M. Shair*, senior assistant state's attorney, with whom were *Gail P. Hardy*, state's attorney, and, on the brief, *Herbert Carlson*, supervisory assistant state's attorney, for the appellee (state).

*Opinion*

McLACHLAN, J. The defendant, Randall Brown, appeals,[1] from the trial court's judgment of conviction, following a jury trial, of felony murder in violation of General Statutes § 53a-54c, murder in violation of General Statutes § 53a-54a (a), robbery in the first degree in violation of General Statutes §§ 53a-134 (a) (4) and 53a-8, attempt to commit robbery in the first degree in violation of General Statutes §§ 53a-49 (a) (2) and 53a-134 (a) (4), conspiracy to commit robbery in the first degree in violation of General Statutes §§ 53a-48 (a) and 53a-134 (a) (4), carrying a pistol or revolver without a permit in violation of General Statutes § 29-35 (a) and criminal possession of a firearm in violation of General Statutes § 53a-217 (a) (1). The defendant claims that: (1) the evidence was insufficient to support his conviction of robbery; (2) his conviction of both robbery and attempted robbery violates the prohibition against double jeopardy in the state and federal constitutions; (3) the trial court improperly instructed the jury on specific intent for the crimes of robbery, attempt to commit robbery, conspiracy to commit robbery and murder; and (4) the trial court improperly instructed the jury regarding liability pursuant to the doctrine set forth in *Pinkerton* v. *United States*, 328 U.S. 640, 647–48, 66 S. Ct. 1180, 90 L. Ed. 1489 (1946). We affirm the judgment of the trial court.

[1] The defendant appealed directly to this court pursuant to General Statutes § 51-199 (b), which provides in relevant part: "The following matters shall be taken directly to the Supreme Court . . . (3) an appeal in any criminal action involving a conviction for a capital felony, class A felony, or other felony, including any persistent offender status, for which the maximum sentence which may be imposed exceeds twenty years . . . ."

The jury reasonably could have found the following facts. On May 23, 2005, Jamar Williams, a cousin of the victim, Demarco Mitchell, went for a drive with the defendant. The defendant, who was driving, parked in front of a two-family house located at 103-105 Colebrook Street in Hartford. An individual then approached the passenger side of the vehicle. After greeting Williams and the defendant, the individual removed a gun from underneath his shirt and passed it across Williams to the defendant. The defendant then drove away.

Later that day, Eddy Hall, Jr., and Idris France were visiting Chijoke Jackson at Jackson's home at 103 Colebrook Street. Either Jackson or France suggested that the three of them should rob someone that evening.[2] Jackson suggested that they rob the victim because Jackson knew that he sold crack cocaine and would have drugs with him. Hall, Jackson and France developed the following plan. Hall and Jackson would meet with the victim under the pretense of purchasing drugs. France would then approach the car and rob the victim as well as Hall and Jackson to prevent the victim from suspecting that he had been set up.

After receiving a call on his cell phone, France told Hall and Jackson that the defendant wanted to be included in the robbery. Jackson then contacted the victim and suggested that they meet at a nearby car wash, but the victim said that he did not feel safe meeting at the car wash and suggested that they meet on Colebrook Street. Jackson agreed. France then left through the front door of Jackson's home. Hall and Jackson left through the back door and got into a Nissan Maxima. Jackson drove the Maxima to the front of the house and parked on Colebrook Street. Before leaving

---

[2] Hall testified that Jackson had first suggested robbing the victim. Jackson testified that France had first suggested the robbery and that France and Hall had forced him to participate.

the apartment, Hall noticed that France was carrying a small handgun.

At approximately the same time, the victim and his two half brothers, Devon Roberts and Lamont Davis, drove to Colebrook Street. The victim had told Roberts that they were going to meet someone named Chi,[3] who wanted to purchase crack cocaine. When the victim drove up behind the Maxima, Jackson called France's cell phone to alert him of the victim's arrival. In the rearview mirror, Jackson saw the defendant standing in the street behind the car. The victim got into the backseat of the Maxima and passed Jackson some cocaine. France then approached the driver's side of the Maxima and said that he wanted to buy some compact discs from Jackson. When France said that he was actually interested in purchasing cocaine, and began removing money from his pocket, Jackson warned France that he was being too obvious and told him to get in the backseat, which he did. The victim said that he had one ounce of crack cocaine and could sell some to both France and Jackson.

France took out a gun and pointed it at the victim's head. The victim slapped the gun away, and he and France struggled for control of the gun. Meanwhile, Hall jumped out of the car and ran down Colebrook Street, and the defendant ran after Hall with a gun in his hand. Hall saw that the defendant was chasing him and laid facedown on the ground. The defendant stood over Hall, and pointed the gun at his head. France then yelled to the defendant that Hall was "fam," meaning family.

France next gestured that the defendant should run after the victim, who had jumped out of the car and was running in the opposite direction down Colebrook Street. When France's attempt to shoot the victim failed,

---

[3] Jackson is also known as Chi.

he shouted at the defendant to shoot the victim. The defendant ran after the victim, who tripped and fell near the curb of 103-105 Colebrook Street. The defendant then stood over the victim and shot him in the head. After searching the victim's pockets, the defendant got into a car driven by Jackson and drove away.

The record also reveals the following procedural history. The defendant was charged with felony murder, murder, robbery in the first degree, attempt to commit robbery in the first degree, conspiracy to commit robbery in the first degree, carrying a pistol without a permit and criminal possession of a firearm. The jury returned a verdict of guilty on all seven counts. On January 12, 2007, the court sentenced the defendant to a total effective term of fifty-five years incarceration.[4] This appeal followed.

I

The defendant first claims that the state failed to prove beyond a reasonable doubt that he had committed robbery in the first degree as either a principal or an accessory. The defendant maintains that the evidence was insufficient to permit the jury to find beyond a reasonable doubt that either he or one of the coconspirators unlawfully took property from the victim. Specifically, the defendant argues that to conclude, from the evidence presented, that the defendant took the victim's property would amount to mere conjecture and speculation on the part of the jury. In response, the state contends that testimony from Hall and Jackson provided sufficient evidence to support the jury's verdict. We agree with the state.

"In reviewing a sufficiency of the evidence claim, we apply a two-part test. First, we construe the evidence

---

[4] The defendant's conviction of felony murder was merged with his conviction of murder.

in the light most favorable to sustaining the verdict. Second, we determine whether upon the facts so construed and the inferences reasonably drawn therefrom the jury reasonably could have concluded that the cumulative force of the evidence established guilt beyond a reasonable doubt. . . .

"[A]s we have often noted, proof beyond a reasonable doubt does not mean proof beyond all possible doubt . . . nor does proof beyond a reasonable doubt require acceptance of every hypothesis of innocence posed by the defendant that, had it been found credible by the trier, would have resulted in an acquittal. . . . On appeal, we do not ask whether there is a reasonable view of the evidence that would support a reasonable hypothesis of innocence. We ask, instead, whether there is a reasonable view of the evidence that supports the jury's verdict of guilty." (Internal quotation marks omitted.) *State* v. *Bruno*, 293 Conn. 127, 135–36, 975 A.2d 1253 (2009).

Additionally, "the jury must find every element proven beyond a reasonable doubt in order to find the defendant guilty of the charged offense, [but] each of the basic and inferred facts underlying those conclusions need not be proved beyond a reasonable doubt. . . . If it is reasonable and logical for the jury to conclude that a basic fact or an inferred fact is true, the jury is permitted to consider the fact proven and may consider it in combination with other proven facts in determining whether the cumulative effect of all the evidence proves the defendant guilty of all the elements of the crime charged beyond a reasonable doubt." (Internal quotation marks omitted.) *State* v. *Morgan*, 274 Conn. 790, 799, 877 A.2d 739 (2005). "Moreover, it does not diminish the probative force of the evidence that it consists, in whole or in part, of evidence that is circumstantial rather than direct. . . . It is not one fact, but the cumulative impact of a multitude of facts which

establishes guilt in a case involving substantial circumstantial evidence. . . . In evaluating evidence, the [finder] of fact is not required to accept as dispositive those inferences that are consistent with the defendant's innocence. . . . The [finder of fact] may draw whatever inferences from the evidence or facts established by the evidence it deems to be reasonable and logical." (Internal quotation marks omitted.) *State* v. *Martin*, 285 Conn. 135, 148, 939 A.2d 524, cert. denied, 555 U.S. 859, 129 S. Ct. 133, 172 L. Ed. 2d 101 (2008).

Finally, "[t]he trier of fact may credit part of a witness' testimony and reject other parts." (Internal quotation marks omitted.) *State* v. *Millan*, 290 Conn. 816, 825, 966 A.2d 699 (2009). "[W]e must defer to the jury's assessment of the credibility of the witnesses based on its firsthand observation of their conduct, demeanor and attitude . . . . This court cannot substitute its own judgment for that of the jury if there is sufficient evidence to support the jury's verdict." (Internal quotation marks omitted.) *State* v. *Gould*, 241 Conn. 1, 6–7, 695 A.2d 1022 (1997).

To sustain a conviction for the crime of robbery in the first degree pursuant to § 53a-134 (a) (4), the state must prove beyond a reasonable doubt that "in the course of the commission of the crime of robbery as defined in [General Statutes §] 53a-133 or of immediate flight therefrom, [the defendant] or another participant in the crime . . . displays or threatens the use of what he represents by his words or conduct to be a pistol, revolver, rifle, shotgun, machine gun or other firearm . . . ." Section 53a-133 provides that "[a] person commits robbery when, in the course of committing a larceny, he uses or threatens the immediate use of physical force upon another person for the purpose of: (1) Preventing or overcoming resistance to the taking of the property or to the retention thereof immediately after the taking; or (2) compelling the owner of such property

or another person to deliver up the property or to engage in other conduct which aids in the commission of the larceny." The elements of larceny include: "(1) the wrongful taking or carrying away of the personal property of another; (2) the existence of a felonious intent in the taker to deprive the owner of [the property] permanently; and (3) the lack of consent of the owner." (Internal quotation marks omitted.) *State* v. *Calonico*, 256 Conn. 135, 153, 770 A.2d 454 (2001); see General Statutes § 53a-119.

The defendant challenges the sufficiency of the evidence as to the first element of larceny, namely, that the defendant or a coconspirator wrongfully took or carried away the victim's personal property. After reviewing the cumulative evidence presented at trial, and viewing it in the light most favorable to sustaining the verdict, we conclude that there was sufficient evidence for the jury to find beyond a reasonable doubt that the defendant unlawfully took property from the victim and committed the crime of robbery in the first degree in violation of § 53a-134 (a) (4).

On the basis of the testimony presented at trial, the jury reasonably could have inferred that the victim had drugs, money or both on his person. Hall testified that Jackson had suggested robbing the victim because he knew the victim was a drug dealer and would have drugs with him. Roberts testified that the victim told him that he was going to meet someone on Colebrook Street who wished to purchase one-quarter ounce of crack. Moreover, Jackson testified that after the defendant shot the victim, the defendant went through the victim's pockets. The jury reasonably could have inferred from this testimony that the victim had money or drugs with him when he went to meet Jackson, and that the defendant unlawfully removed drugs, money or both from the victim's pockets after shooting him. We conclude that the evidence in the present case,

viewed in the light most favorable to sustaining the verdict, was sufficient to support a finding that the defendant unlawfully took property from the victim.

## II

The defendant next claims that the trial court violated his rights pursuant to the double jeopardy clause of the state and federal constitutions when it imposed sentences for both robbery in the first degree and attempted robbery in the first degree.[5] The defendant argues that the charges arose out of the same transaction and that the sole difference between the charges is whether the robbery was completed or attempted. He contends that the convictions for robbery and attempted robbery must be merged and that the sentence for attempted robbery must be vacated. The state responds that the defendant constitutionally may be punished separately for each offense because the acts that constituted the attempted robbery may be separated from the acts that constituted the robbery. We agree with the state.

The defendant's claim presents a question of law, over which we employ plenary review. *State* v. *Burnell,* 290 Conn. 634, 642, 966 A.2d 168 (2009). "The fifth

---

[5] Because the defendant's double jeopardy claim was not raised at trial and, therefore, was not properly preserved for appellate review, he seeks review under *State* v. *Golding,* 213 Conn. 233, 239–40, 567 A.2d 823 (1989). Pursuant to *Golding,* a defendant can prevail on an unpreserved claim of constitutional error "only if all of the following conditions are met: (1) the record is adequate to review the alleged claim of error; (2) the claim is of constitutional magnitude alleging the violation of a fundamental right; (3) the alleged constitutional violation clearly exists and clearly deprived the defendant of a fair trial; and (4) if subject to harmless error analysis, the state has failed to demonstrate harmlessness of the alleged constitutional violation beyond a reasonable doubt." Id., 239–40. The state concedes that the first two prongs are satisfied; see *State* v. *Alvaro F.,* 291 Conn. 1, 5 n.8, 966 A.2d 712, cert. denied, 558 U.S. 882, 130 S. Ct. 200, 175 L. Ed. 2d 140 (2009) (double jeopardy claim is of constitutional magnitude); but argues that the defendant has failed to satisfy the third prong. We agree with the state for the reasons set forth in part II of this opinion.

amendment to the United States constitution provides in relevant part: No person shall . . . be subject for the same offense to be twice put in jeopardy of life or limb . . . . The double jeopardy clause of the fifth amendment is made applicable to the states through the due process clause of the fourteenth amendment." (Internal quotation marks omitted.) Id.; see also *Benton* v. *Maryland*, 395 U.S. 784, 794, 89 S. Ct. 2056, 23 L. Ed. 2d 707 (1969) (double jeopardy clause applicable to states through fourteenth amendment to United States constitution). The defendant also invokes the protections of our state constitution. Although the Connecticut constitution does not include a specific double jeopardy provision, we have held that "the due process and personal liberty guarantees provided by article first, §§ 8[6] and 9,[7] of the Connecticut constitution . . . encompass the protection against double jeopardy. . . . The protection afforded against double jeopardy under the Connecticut constitution mirrors, rather than exceeds, that which is provided by the constitution of the United States." (Citation omitted; internal quotation marks omitted.) *State* v. *Anderson*, 295 Conn. 1, 7–8, 988 A.2d 276 (2010); see also *State* v. *Michael J.*, 274 Conn. 321, 350, 875 A.2d 510 (2005) (due process guarantees encompassed by article first, § 8, of Connecticut constitution include protection against double jeopardy). Accordingly, we address the defendant's claim under the fifth amendment.

"Double jeopardy prohibits not only multiple trials for the same offense, but also multiple punishments for the same offense. . . . The double jeopardy analysis in the context of a single trial is a two part process.

---

[6] Article first, § 8, of the constitution of Connecticut provides in relevant part: "No person shall . . . be deprived of life, liberty or property without due process of law . . . ."

[7] Article first, § 9, of the constitution of Connecticut provides: "No person shall be arrested, detained or punished, except in cases clearly warranted by law."

First, the charges must arise out of the same act or transaction. Second, it must be determined whether the charged crimes are the same offense. Multiple punishments are forbidden only if both conditions are met. . . . The defendant on appeal bears the burden of proving that the prosecutions are for the same offense in law and fact." (Internal quotation marks omitted.) *State v. Scott*, 270 Conn. 92, 98, 851 A.2d 291 (2004), cert. denied, 544 U.S. 987, 125 S. Ct. 1861, 161 L. Ed. 2d 746 (2005). Our analysis focuses on the first prong of the test, namely, whether the charges of attempt to commit robbery and robbery arose out of the same act or transaction.

Although "[d]ouble jeopardy prohibits multiple punishments for the same offense in the context of a single trial . . . distinct repetitions of a prohibited act, however closely they may follow each other . . . may be punished as separate crimes without offending the double jeopardy clause. . . . The same transaction, in other words, may constitute separate and distinct crimes where it is susceptible of separation into parts, each of which in itself constitutes a completed offense. . . . [*T*]*he test is not whether the criminal intent is one and the same and inspiring the whole transaction, but whether separate acts have been committed with the requisite criminal intent and are such as are made punishable by the [statute]*." (Emphasis added; internal quotation marks omitted.) Id., 99–100, quoting *State v. Miranda*, 260 Conn. 93, 122–23, 794 A.2d 506, cert. denied, 537 U.S. 902, 123 S. Ct. 224, 154 L. Ed. 2d 175 (2002).

This court previously has concluded that § 53a-133, the operative statute in the present case, "clearly mandates punishment for each and every robbery of each and every person, irrespective of whether the robbery was spatially linked with another robbery." *State v. Lytell*, 206 Conn. 657, 667, 539 A.2d 133 (1988). In *State*

v. *Tweedy*, 219 Conn. 489, 489–99, 594 A.2d 906 (1991), when we construed § 53a-133 in the context of a double jeopardy claim, we stated: "[T]he statute provides that a criminal defendant commits robbery when, in the course of committing a larceny, the defendant engages in forcible conduct with a proscribed purpose. The legislature thus expressly designated the course of committing a larceny, rather than the course of forcible conduct, as the time frame for completion of the offense of robbery. . . . Consequently, we conclude that the legislature intended § 53a-133 to authorize a punishment for robbery each time a criminal defendant with the requisite intent engages in forcible conduct against another person in the course of committing a larceny, irrespective of whether such conduct is unceasingly directed toward a single victim." (Citations omitted; internal quotation marks omitted.) We concluded that the defendant in *Tweedy* had committed two separately punishable offenses of robbery under § 53a-133 when he "threaten[ed] to shoot the victim with the requisite purpose in the course of committing a larceny at 8 a.m. within her apartment . . . [and] then . . . threaten[ed] to shoot the victim with the requisite purpose in the course of committing a larceny at 9 a.m. at the bank located several blocks from her apartment." (Internal quotation marks omitted.) Id., 499–500.

In the present case, the attempted robbery occurred when the victim was in the car with France, Hall and Jackson—the three people with whom the defendant had conspired to rob the victim. When France pointed a gun at the victim's head, the victim slapped the gun away and struggled for control of the gun. The victim then escaped and ran down Colebrook Street. The attempted robbery became a complete transaction when the attempt failed and the victim escaped.

After the victim escaped the attempted robbery, he tripped and fell on Colebrook Street. The defendant,

who had run after him with a gun in his hand, stood over the victim and shot him in the head. The defendant then commenced and completed the second act of robbery by going through the victim's pockets. He thus participated in two separate and severable crimes.

The defendant relies principally on our decision in *State* v. *Gould*, supra, 241 Conn. 24, arguing that here, as in *Gould*, the "attempted robbery in the first degree is a lesser included offense of robbery in the first degree and the convictions of these offenses must be merged." As we have explained, however, the protections of the double jeopardy clause are violated only when the charged crimes are the same offense *and* arose out of the same transaction. See *State* v. *Scott*, supra, 270 Conn. 98. In *Gould*, the defendants robbed a jewelry store by shooting the victim, going through the victim's pockets and taking money and jewelry from the store safe. *State* v. *Gould*, supra, 5. The state did not argue that the offenses were susceptible of separation; rather, the state conceded that the two offenses must be merged. Id., 23–24. In the present case, in contrast, the defendant has failed to meet his burden of proving that his conviction for attempted robbery and his conviction for robbery arose out of the same transaction.

Accordingly, because there were two separate transactions, the defendant could be convicted of an offense arising out of each transaction without offending the prohibition against double jeopardy. The attempted robbery of the victim in the vehicle, as perpetrated by the defendant's coconspirators, and the robbery of the victim by the defendant following the victim's escape, support separate convictions for attempted robbery and robbery. Consequently, we cannot conclude that a constitutional violation exists under *State* v. *Golding*, 213 Conn. 233, 239–40, 567 A.2d 823 (1989).

## III

Finally, the defendant claims that the trial court improperly instructed the jury on *Pinkerton*[8] liability as a basis for finding the defendant guilty of murder and that the court improperly instructed the jury on specific intent. Specifically, the defendant argues that the court improperly omitted an element of *Pinkerton* liability in its charge by failing to instruct the jury that in order to find the defendant guilty of murder, it must find that the murder was reasonably foreseeable as a necessary or natural consequence of the conspiracy.[9]

---

[8] See *Pinkerton* v. *United States*, supra, 328 U.S. 647–48. "Under the *Pinkerton* doctrine . . . a conspirator may be held liable for criminal offenses committed by a coconspirator that are within the scope of the conspiracy, are in furtherance of it, and are reasonably foreseeable as a necessary or natural consequence of the conspiracy." (Internal quotation marks omitted.) *State* v. *Coward*, 292 Conn. 296, 307, 972 A.2d 691 (2009).

[9] The court instructed the jury as follows: "Now that I've explained the crime of conspiracy to you there is an additional instruction regarding the charge of murder as alleged in count two that I must explain to you now, and which you must consider.

"As I have explained to you, the defendant is charged in count two with the crime of murder. If you conclude that the crime of murder was committed but that the defendant did not kill [the victim], there is an additional step to your deliberations.

"There is a doctrine in our law that provides that once a defendant's participation in a conspiracy is established he is responsible for each of the criminal acts of the other coconspirators which is within the scope of and in furtherance of the conspiracy.

"This means, in this case, with respect to count two of the information, that if you conclude that the defendant . . . is in fact guilty of conspiracy to commit robbery in the first degree as charged in count five of the information, but that he was not guilty of the murder of [the victim] as charged in count two, then you must determine whether sufficient evidence has been provided to you beyond a reasonable doubt that another member of the same conspiracy, that is . . . Hall . . . or . . . Jackson or . . . France did in fact commit the crime of murder of [the victim] as I have defined that for you when I discuss[ed] count two.

"If such other member of the conspiracy did commit the crime of murder as alleged in count two and if the shooting was *in the scope of and in furtherance of the conspiracy* of which you have concluded the defendant was a member, that is, robbery in the first degree, then each and every member of that conspiracy would be guilty of murder as charged in count

The defendant also argues that the court improperly instructed the jury on specific intent for the crimes of robbery and attempted robbery as predicate felonies to felony murder, and for murder, robbery in the first degree, attempted robbery in the first degree and conspiracy to commit robbery because the court referred to both general intent and specific intent, as defined by General Statutes § 53a-3 (11).[10] The defendant contends that it is reasonably possible that these improper instructions misled the jury and that, as a result, the jury returned a verdict of guilty without finding that the state had proven the requisite intent beyond a reasonable doubt.

The state first argues that because the defendant had the opportunity to review the charge as given, indicated his satisfaction with the charge and objected only to the extent that the instructions differed from his request to charge, and did not refer to instructions on *Pinkerton* liability or specific intent, he has waived his unpreserved claims of instructional error. The state also argues, in the alternative, that the court's instructions sufficiently conveyed the concept of *Pinkerton* liability, and that any error was harmless because the evidence suggested that the defendant, not one of his coconspirators, had shot the victim. With regard to the challenged instructions on intent, the state argues that there is no reasonable possibility that the jury was misled because the court gave the correct instruction regarding specific intent numerous times. In sum, the state argues that

---

two of the information. In that event, the defendant would be guilty of murder as charged in count two even though he did not personally commit the murder of [the victim].

" 'In furtherance' means that there is a relationship between the robbery in the first degree and the murder of [the victim]." (Emphasis added.)

[10] General Statutes § 53a-3 (11) provides in relevant part: "A person acts 'intentionally' with respect to a result or to conduct described by a statute defining an offense when his conscious objective is to cause such result or to engage in such conduct . . . ."

the defendant cannot satisfy the third prong of *Golding* because he cannot establish that the challenged instructions constituted a constitutional violation that clearly deprived him of a fair trial.

## A

We turn first to the state's argument that the defendant has waived his claims of instructional error.[11] The defendant acknowledges that he failed to preserve these claims because he did not address them in his written request to charge or take exception to the instruction as given, and seeks review pursuant to *State* v. *Golding*, supra, 213 Conn. 239–40, and the plain error doctrine. See Practice Book § 60-5. We conclude that the defendant has waived his claim with regard to the court's instructions on intent, but not with regard to the court's *Pinkerton* instruction.

The record reveals the following additional facts. Prior to the commencement of trial, the defendant submitted his request to charge, which did not discuss specific intent or *Pinkerton* liability. The state also filed a request to charge, which included an instruction on *Pinkerton* liability.[12] On November 6, 2006, prior to charging the jury, the court noted for the record that it had held a charging conference with counsel, that it had considered the requests to charge submitted by defense counsel and the state, and that it had incorporated some of the requests but not others. The court

[11] In its brief, the state argues that the defendant has waived his instructional error claim only with regard to the *Pinkerton* instruction, and, at oral argument asked that we apply this argument to the defendant's challenge to the court's instructions on intent. Because, as the defendant notes in his reply brief, defense counsel took exactly the same action with regard to both instructions, we will consider the state's waiver argument with regard to both instructional claims.

[12] The state requested, in relevant part, that the court charge the jury that "[a] coconspirator could be held liable for murder if that crime was the 'natural and probable consequence of a common plan' and was committed while acting in pursuance of or in furtherance of the common design."

stated that it had given a copy of the final charge to counsel for their review on November 3, 2006. The court then stated that counsel had been "given an opportunity to review [the charge] and to make any suggestions or corrections or comments about [it], which was done . . . ." At the conclusion of the charge, the court asked counsel if there were any objections or corrections to the charge. Defense counsel corrected a typographical error and then stated that "the only thing else I'd like to say is that to the extent that the court's final charge differs from the defendant's request to charge we take exception."

Our resolution of the defendant's instructional claims turns on our recent decision in *State* v. *Kitchens*, 299 Conn. 447, 10 A.3d 942 (2011). In *Kitchens*, we concluded that "when the trial court provides counsel with a copy of the proposed jury instructions, allows a meaningful opportunity for their review, solicits comments from counsel regarding changes or modifications and counsel affirmatively accepts the instructions proposed or given, the defendant may be deemed to have knowledge of any potential flaws therein and to have waived implicitly the constitutional right to challenge the instructions on direct appeal." Id., 482–83. In the present case, the court held a charging conference during which counsel had an opportunity to participate in the formulation of the jury charge. Defense counsel received a copy of the court's proposed charge, and was given an opportunity to review it and to raise any objections. When the court asked whether counsel had any objections or corrections, defense counsel took exception only to the extent that the court's charge differed from his request to charge. The defendant's request to charge did not address the issue of specific intent. Thus, defense counsel had a meaningful opportunity to review the court's instructions and to object to any language therein. Therefore, in accordance with our holding in

*Kitchens*, we conclude that the defendant implicitly waived his right to challenge the court's instructions on intent and is not entitled to *Golding* review.[13]

With regard to the court's instructions on *Pinkerton* liability, however, we conclude that the present case is distinguishable from *Kitchens*. Significantly, the state's request to charge contained a proper *Pinkerton* instruction. Because we have no record of the charging conference or copy of the court's intended charge, we do not know if the trial court expressly rejected the state's proper request to charge, or included the proper instruction in the copy of the charge that it provided to counsel, but inadvertently omitted it from the actual charge to the jury. The elements of *Pinkerton* liability are well established. See footnote 8 of this opinion. It is reasonable to assume, therefore, that the omission was inadvertent. Under these circumstances, we cannot determine from the record whether the copy of the final instructions given to defense counsel included the correct charge or the charge as actually given. Thus, unlike in *Kitchens*, we cannot infer that defense counsel had knowledge of any potential flaws in the court's *Pinkerton* instruction. *State* v. *Kitchens*, supra, 299 Conn. 482–83. Because we cannot reasonably conclude that counsel was aware in advance of the instructional deficiency, we will not conclude that the defendant has waived his right to challenge the charge on direct appeal.

### B

We now turn to the defendant's claim that the court improperly instructed the jury on *Pinkerton* liability

---

[13] Unlike the circumstances pertaining to the *Pinkerton* instruction, the record does not disclose, nor does the defendant argue, that there was anything in the court's proposed instruction, the charging conference, the defendant's request to charge or the state's request to charge from which counsel could have assumed that the correct charge would be given to the jury.

when it failed to instruct the jury that, in order to find the defendant guilty of murder under that doctrine, it must find that the murder was reasonably foreseeable as a necessary or natural consequence of the conspiracy. The state concedes that the first two prongs of *Golding* are satisfied and that the defendant's claims are therefore reviewable, but contends that the defendant is not entitled to relief under *Golding* because he cannot establish that the challenged instruction constituted a constitutional violation that clearly deprived him of a fair trial. The state further contends that any impropriety in the instruction was harmless beyond a reasonable doubt. We agree with the state that the defendant cannot prevail under *Golding*.

As we have explained previously in this opinion, under the *Pinkerton* doctrine "a conspirator may be held liable for criminal offenses committed by a coconspirator that are within the scope of the conspiracy, are in furtherance of it, and *are reasonably foreseeable as a necessary or natural consequence of the conspiracy*." (Emphasis added; internal quotation marks omitted.) *State* v. *Martin*, supra, 285 Conn. 158–59. In the present case, the court instructed the jury that if the murder of the victim was "in the scope of and in furtherance of the conspiracy of which you have concluded the defendant was a member . . . the defendant would be guilty of murder as charged in count two even though he did not personally commit the murder of [the victim]." Even assuming this instruction was improper, we conclude that it was harmless beyond a reasonable doubt. See *State* v. *Golding*, supra, 213 Conn. 239–40.

"An alleged defect in a jury charge which raises a constitutional question is reversible error if it is reasonably possible that, considering the charge as a whole, the jury was misled. . . . In performing harmless error analysis, we keep in mind that [i]n determining whether it was indeed reasonably possible that the jury was

misled by the trial court's instructions, the charge to the jury is not to be critically dissected for the purpose of discovering possible inaccuracies of statement, but it is to be considered rather as to its probable effect upon the jury in guiding them to a correct verdict in the case. . . . The charge is to be read as a whole and individual instructions are not to be judged in artificial isolation from the overall charge." (Citations omitted; internal quotation marks omitted.) *State* v. *Williams*, 258 Conn. 1, 26, 778 A.2d 186 (2001). "Furthermore, in *Neder* [v. *United States*, 527 U.S. 1, 15–17, 119 S. Ct. 1827, 144 L. Ed. 2d 35 (1999)], the United States Supreme Court enunciated a more specific test to use in determining whether an omitted element of a charge harmed the accused. A jury instruction that improperly omits an essential element from the charge constitutes harmless error if a reviewing court concludes beyond a reasonable doubt that the omitted element was uncontested and supported by overwhelming evidence, such that the jury verdict would have been the same absent the error . . . ." (Internal quotation marks omitted.) *Small* v. *Commissioner of Correction*, 286 Conn. 707, 728, 946 A.2d 1203, cert. denied sub nom. *Small* v. *Lantz*, 555 U.S. 975, 129 S. Ct. 481, 172 L. Ed. 2d 336 (2008).

In the present case, it is undisputed that the underlying conspiracy, with which the defendant was charged and convicted, revolved around the armed robbery of the victim. The state presented overwhelming evidence that the defendant knew that the other members of the conspiracy were carrying firearms, and that the defendant was carrying a firearm. Moreover, the defendant never argued that it was not reasonable and foreseeable that the natural consequences of that conspiracy would involve the death of the victim—he merely claimed that he was not the shooter. Accordingly, we conclude that, even assuming that the court's instruction improperly omitted the reasonably foresee-

able element of *Pinkerton* liability, it is clear beyond a reasonable doubt that the impropriety did not affect the verdict because the foreseeability of the murder as a consequence of the conspiracy was uncontested and was supported by overwhelming evidence. See id. The defendant's claim therefore fails under the fourth prong of *Golding*.

The judgment is affirmed.

In this opinion ROGERS, C. J., and NORCOTT, VERTEFEUILLE and ZARELLA, Js., concurred.

KATZ, J., concurring. To paraphrase William Shakespeare, I write to bury *State* v. *Golding*, 231 Conn. 233, 567 A.2d 823 (1989), not to praise it.[1] That is because, on the basis of this court's recent decision in *State* v. *Kitchens*, 299 Conn. 447, 10 A.3d 942 (2011), the majority determines that the defendant, Randall Brown, waived his right to *Golding* review of an allegedly improper intent instruction despite the fact that we do not know what transpired between the court and the parties in the charging conference that was held off the record.[2] I continue to believe that, because constitutional claims implicate fundamental rights, we should not bar a defendant from raising a meritorious constitutional claim solely because the defendant failed to identify the violation at trial and that review of unpreserved instructional errors pursuant to *Golding* should be foreclosed *only* when the record reflects that the defendant, through defense counsel, knowingly and intentionally relinquished his objection to the error.

---

[1] W. Shakespeare, Julius Caesar, act 3, sc. 2.

[2] Therefore, despite the majority's attempt to moderate the impact of its decision in *Kitchens* by assuring defendants that the court will find implied waiver only when there was a "meaningful opportunity to review" the trial court's instructions, this case demonstrates that this alleged safeguard was but an empty promise.

Unfortunately, the majority of my colleagues are satisfied to conclude that, if a trial court follows the bare outline of the procedures set forth in the Practice Book concerning jury instructions, a defendant *automatically and categorically* will be denied access to *Golding* review. I believe the majority's approach represents an unwarranted expansion of the holding in *Kitchens* because it fails to acknowledge that the present case rests on a significantly different record than was available in *Kitchens*. In doing so, the majority once more revises our waiver standard, predicating it this time on the merest technical compliance with our rules of practice. In contrast to *Kitchens*, there is *no record* before this court of what occurred at the charging conference in the present case. We thus have no way to determine whether, as *Kitchens* requires, there was a "meaningful opportunity" for the defendant to participate in shaping the instructions.[3] See id., 482–83. Indeed, the majority in the present case seems to recognize this when it states: "Under these circumstances, we cannot determine from the record whether the copy of the final instructions given to defense counsel included the correct charge or the charge as actually given."

Rather than acknowledge the difference between the records in this case and *Kitchens*, the majority distinguishes the present case from *Kitchens* only to the extent that, in the present case, the prosecution submitted a request to charge that contained the proper instructional language, at least as to the jury instruction applying *Pinkerton* v. *United States*, 328 U.S. 640, 647–48, 66 S. Ct. 1180, 90 L. Ed. 1489 (1946). In response to the inconsistency between the request to charge and the charge as given, the majority assumes, based largely on the fact that the elements of *Pinkerton* liability are

---

[3] I note that the analysis in accordance with basic principles of fundamental fairness in *Kitchens* also relied on the promotion of on-the-record charging conferences. See *State* v. *Kitchens*, supra, 299 Conn. 495.

well established, that the trial court's omission of the
missing element was inadvertent. From that assump-
tion, the majority then concludes that the defendant
should not be deemed to have waived *Golding* review
of his *Pinkerton* claim. Although the correct definition
of specific intent is equally well established; see *State*
v. *Shine*, 193 Conn. 632, 638, 479 A.2d 218 (1984); *State*
v. *Biting*, 162 Conn. 1, 5, 291 A.2d 240 (1971); see also
*State* v. *Hampton*, 293 Conn. 435, 457 n.15, 978 A.2d
1089 (2009); *State* v. *Salamon*, 287 Conn. 509, 573–74,
949 A.2d 1092 (2008); the majority refuses to apply the
same generous presumption to the trial court's failure
to provide that instruction, and, accordingly, concludes
that the defendant has waived *Golding* review of his
claim regarding specific intent. I agree with the majority
that the discrepancy between the state's request to
charge and the charge as given is significant. I conclude,
however, that the uncertainty concerning the fate of the
prosecution's request to charge is but an *illustration* of
the fact that, without an on-the-record charging confer-
ence or a copy of the draft instructions, we cannot
make any conclusive determinations or presumptions[4]
regarding the accuracy, meaningfulness or true effect
of the process by which the trial court developed the
jury instructions.

As a result of the decisions in *Kitchens* and the pre-
sent case, we have gone from one of the more forgiving
jurisdictions to one of the least tolerant when it comes

---

[4] "To establish a presumption is to say that a finding of the predicate fact
. . . produces a *required conclusion* in the absence of explanation . . . ."
(Emphasis added; internal quotation marks omitted.) *Mele* v. *Hartford*, 270
Conn. 751, 769, 855 A.2d 196 (2004); see also *State* v. *Davis*, 286 Conn. 17,
45 n.5, 942 A.2d 373 (2008) (*Katz, J.*, concurring) ("A presumption is equiva-
lent to prima facie proof that something is true. It may be rebutted by
sufficient and persuasive contrary evidence." [Internal quotation marks omit-
ted.]). Under the majority's approach, the predicate fact of compliance with
our rules of practice compels the conclusion that the defendant waived
*Golding* review.

to human error, at least defense counsel's error.[5] I am deeply troubled by this turn of events. "Bear with me; My heart is in the coffin there with [*Golding*], And I must pause till it comes back to me." W. Shakespeare, Julius Caesar, act 3, sc. 2.

Because I would conclude that the defendant did not waive *Golding* review of his claim regarding the intent instruction, I turn to the merits of that claim. The defendant claims that, when it instructed the jury concerning the specific intent crimes of robbery and attempted robbery as predicate offenses to felony murder, murder, robbery in the first degree, attempted robbery in the first degree and conspiracy to commit robbery in the first degree, the trial court improperly provided a definition of intent that encompassed both general and specific intent. The state concedes that the first two prongs of *Golding* are satisfied and that the defendant's claims are therefore reviewable, but contends that the defendant is not entitled to relief under *Golding* because he cannot establish that the challenged instructions constituted a constitutional violation that clearly deprived him of a fair trial. I agree with the state that the defendant cannot prevail under *Golding*.

"Our standard of review for claims of instructional impropriety is well established. The principal function of a jury charge is to assist the jury in applying the law correctly to the facts which they might find to be established . . . . When reviewing [a] challenged jury instruction . . . we must adhere to the well settled rule that a charge to the jury is to be considered in its entirety . . . and judged by its total effect rather than by its individual component parts. . . . [T]he test of a court's

---

[5] My research has revealed few other states that have foreclosed appellate review of unpreserved errors. See *Wicks* v. *State*, 270 Ark. 781, 787, 606 S.W.2d 366 (1980); *Earnest* v. *State*, 262 Ga. 494, 498, 422 S.E.2d 188 (1992); *State* v. *Sallis*, 262 N.W.2d 240, 248 (Iowa 1978); *Commonwealth* v. *Clair*, 458 Pa. 418, 421–22, 326 A.2d 272 (1974); *State* v. *Covert*, 368 S.C. 188, 189, 628 S.E.2d 482 (2006).

charge is . . . whether it fairly presents the case to the jury in such a way that injustice is not done to either party . . . . In this inquiry we focus on the substance of the charge rather than the form of what was said not only in light of the entire charge, but also within the context of the entire trial. . . . Moreover, as to unpreserved claims of constitutional error in jury instructions, we have stated that under the third prong of *Golding*, [a] defendant may prevail . . . only if . . . it is reasonably possible that the jury was misled . . . ." (Internal quotation marks omitted.) *State* v. *Lawrence*, 282 Conn. 141, 179, 920 A.2d 236 (2007).

This court frequently has concluded that providing a definition of both general and specific intent is not necessarily constitutionally deficient when the court also provides a proper and thorough definition of intent. See *State* v. *Salamon*, supra, 287 Conn. 573; *State* v. *Austin*, 244 Conn. 226, 238, 710 A.2d 732 (1998); *State* v. *Prioleau*, 235 Conn. 274, 321–22, 664 A.2d 743 (1995). Although the instructions in the present case were not a paragon of clarity, my review of the record[6] indicates

[6] The defendant's claim arises from the court's instruction on robbery, which is implicated in the other offenses at issue. The record reveals the following undisputed facts pertaining to that charge. The court stated: "The gist of the crime of robbery is the act of committing a larceny by force."

The court then elaborated on the elements of larceny, stating in regards to intent: "The state must prove beyond a reasonable doubt that at the time the defendant wrongfully took, obtained or withheld property from an owner he intended to deprive the owner or some other person of it.

" 'To intend to deprive another person of property' means to intend to withhold or keep or cause it to be withheld from another permanently or for so long a period or under such circumstances that the major portion or its value is lost to that person. In other words, the state must prove beyond a reasonable doubt that the defendant took the property for the purpose of keeping or using it permanently or virtually permanently or of disposing the property in a way that there was a permanent or virtually permanent loss of the property to the owner.

"Intent. Now, 'intent' relates to the condition of the mind of the person who commits the act; his purpose in doing it.

"As defined by our statute, a person acts 'intentionally' with respect to a result or to conduct when his conscious objective is to cause such result or to engage in such conduct."

that the trial court took pains to provide a proper definition of intent when it set forth the elements of robbery. It then referred back to that definition of intent as it related to the other charges. Considering the instructions as a whole, therefore, and, in the absence of any evidence to the contrary, I would conclude that there is no reasonable possibility that the jury was misled.

Accordingly, I concur in the judgment.

PALMER, J., concurring. I agree with all of the substantive points that Justice Katz raises in her concurrence. For the reasons set forth therein, as well as for the reasons set forth in her concurrence in *State* v. *Kitchens*, 299 Conn. 447, 500, 10 A.3d 942 (2011) (*Katz, J.*, concurring), and in my concurrence in *Kitchens*; id., 530 (*Palmer, J.*, concurring); I also concur.

---

The court later clarified: "[W]ith respect to larceny, if someone took property honestly, although mistakenly believing that he had a right to do so, you cannot find that he had the required intent to prove this element of larceny. It is essential, therefore, that the state prove beyond a reasonable doubt that the defendant had an unlawful purpose or intention in his mind at the time he took the property."