******************************************************

The "officially released" date that appears near the beginning of an opinion is the date the opinion will be published in the Connecticut Law Journal or the date it is released as a slip opinion. The operative date for the beginning of all time periods for the filing of postopinion motions and petitions for certification is the "officially released" date appearing in the opinion.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports. In the event of discrepancies between the advance release version of an opinion and the version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest version is to be considered authoritative.

The syllabus and procedural history accompanying an opinion that appear in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced or distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

RANDALL BROWN *v.* COMMISSIONER
OF CORRECTION
(AC 46407)

Alvord, Elgo and Suarez, Js.

*Syllabus*

The petitioner appealed, on the granting of certification, from the habeas court's denial of his petition for a writ of habeas corpus. The petitioner claimed, inter alia, that the habeas court erred in finding that no agreement existed between the state and certain witnesses, H and J, in exchange for their testimony at the petitioner's criminal trial. *Held*:

The habeas court's conclusion that the petitioner had failed to establish that an implied or express agreement existed between the state and H and J regarding their testimony at the petitioner's criminal trial was not clearly erroneous.

The habeas court's finding that H's bond modification was not a benefit given to H in exchange for his testimony was not clearly erroneous.
The petitioner's claim that his due process rights were violated by the state's failure to correct misleading testimony was untenable because the testimony of H and J in question was not misleading.

Argued April 10—officially released October 1, 2024

*Procedural History*

Amended petition for a writ of habeas corpus, brought to the Superior Court in the judicial district of Tolland and tried to the court, *M. Murphy, J.*; judgment denying the petition, from which the petitioner, on the granting of certification, appealed to this court. *Affirmed.*

*Samantha Conway*, assigned counsel, for the appellant (petitioner).

*Danielle Koch*, assistant state's attorney, with whom, on the brief, were *Sharmese Walcott*, state's attorney, and *Angela Macchiarulo*, supervisory assistant state's attorney, for the appellee (respondent).

*Opinion*

ELGO, J. The petitioner, Randall Brown, appeals from the judgment of the habeas court denying his amended petition for a writ of habeas corpus. In this certified appeal, the petitioner claims that the court (1) erroneously found that no agreement existed between the state and certain witnesses in exchange for their testimony, (2) erroneously found that a bond modification for a witness who testified at the petitioner's criminal trial did not constitute a benefit to that witness, and (3) improperly concluded that his due process rights were not violated by the state's failure to correct misleading testimony. We affirm the judgment of the habeas court.

The following facts underlying the petitioner's conviction, as set forth by our Supreme Court in his direct appeal, are relevant to our resolution of this appeal. On May 23, 2005, the petitioner, along with Eddy Hall, Jr., Chijoke Jackson and Idris France, devised a plan to rob the victim, Demarco Mitchell. *State* v. *Brown,* 299 Conn. 640, 644, 11 A.3d 663 (2011). Jackson contacted the victim, who agreed to meet him on Colebrook Street in Hartford that evening. Id. When the victim arrived, he got into the backseat of a vehicle with Hall and Jackson; the petitioner stood in the street behind the vehicle. Id., 645. France then entered the backseat and pointed a gun at the victim, and a struggle ensued. Id. The victim jumped out of the vehicle and ran down Colebrook Street chased by the petitioner. Id. When the victim tripped and fell near a curb, the petitioner shot him in the head. Id., 646.

The petitioner thereafter was arrested and charged with felony murder in violation of General Statutes § 53a-54c, murder in violation of General Statutes § 53a-54a (a), robbery in the first degree in violation of General Statutes §§ 53a-8 and 53a-134 (a) (4), attempt to

commit robbery in the first degree in violation of General Statutes §§ 53a-49 (a) (2) and 53a-134 (a) (4), conspiracy to commit robbery in the first degree in violation of General Statutes §§ 53a-48 (a) and 53a-134 (a) (4), carrying a pistol or revolver without a permit in violation of General Statutes § 29-35 (a), and criminal possession of a firearm in violation of General Statutes (Rev. to 2005) § 53a-217 (a) (1). Following a trial, at which Hall and Jackson testified on behalf of the state, the jury found the petitioner guilty on all counts. Id., 646. The trial court rendered judgment in accordance with that verdict and sentenced the petitioner to a total effective term of fifty-five years of incarceration. Id. Our Supreme Court affirmed that judgment of conviction on direct appeal. Id., 662.

On August 16, 2013, the petitioner filed an amended petition for a writ of habeas corpus predicated on the alleged ineffective assistance of his criminal trial counsel. See *Brown* v. *Commissioner of Correction*, 161 Conn. App. 770, 772, 129 A.3d 172 (2015), cert. denied, 320 Conn. 916, 131 A.3d 751 (2016). A trial followed, at the conclusion of which the habeas court denied the petition. On appeal, this court affirmed that judgment. Id., 771–72.

On April 24, 2017, the petitioner commenced the present habeas corpus action. In count one of his second amended petition for a writ of habeas corpus, the petitioner alleged a due process violation stemming from the state's "knowing use of false or misleading testimony" by Hall and Jackson as to whether they received any benefit from the state in exchange for their testimony at the petitioner's criminal trial. In count two, he alleged a further due process violation due to the state's "failure to disclose material exculpatory evidence relating to cooperation agreements" between the state and both Hall and Jackson. In counts three and four, the

petitioner alleged ineffective assistance on the part of counsel in his first habeas action.[1]

A habeas trial was held on November 22, 2021, and May 9, 2022. The petitioner called Jackson, Attorney Herbert E. Carlson, Jr.,[2] Attorney Christopher Parker,[3] Attorney Jeremy N. Weingast,[4] and Attorney Grayson Colt Holmes[5] as witnesses. The parties also submitted several exhibits, including transcripts from the petitioner's criminal trial and court proceedings involving Jackson and Hall. In a thorough memorandum of decision dated February 14, 2023, the court concluded that the petitioner had not established any of his due process or ineffective assistance of habeas counsel claims.[6] Accordingly, the court denied the petition for a writ of habeas corpus, and this certified appeal followed.

As a preliminary matter, we note certain principles relevant to this appeal. "The law governing the state's obligation to disclose exculpatory evidence to defendants in criminal cases is well established. The defendant has a right to the disclosure of exculpatory evidence under the due process clauses of both the United

---

[1] The petitioner also alleged two claims of ineffective assistance on the part of his criminal trial counsel. The petitioner withdrew those claims prior to the habeas trial.

[2] Attorney Carlson represented the state of Connecticut at the petitioner's criminal trial.

[3] Attorney Parker represented Jackson at the time of the petitioner's criminal trial.

[4] Attorney Weingast represented Hall at the time of the petitioner's criminal trial.

[5] Attorney Holmes represented the petitioner during his first habeas corpus action.

[6] In its memorandum of decision, the court found that the petitioner had abandoned his claim that Attorney Holmes had rendered ineffective assistance of habeas counsel by failing to adequately investigate and present testimony regarding the ineffective assistance of the petitioner's criminal trial counsel, as alleged in count four of the petition. The court further found that the petitioner had failed to prove deficient performance on the part of Attorney Holmes for failing to raise due process claims in the petitioner's first habeas corpus action and prejudice resulting therefrom, as alleged in count three of the petition. The petitioner does not challenge the propriety of those determinations in this appeal.

States constitution and the Connecticut constitution. *Brady* v. *Maryland*, 373 U.S. 83, 86, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963); *State* v. *Simms*, 201 Conn. 395, 405 [and] n.8, 518 A.2d 35 (1986). In order to prove a *Brady* violation, the defendant must show: (1) that the prosecution suppressed evidence after a request by the defense; (2) that the evidence was favorable to the defense; and (3) that the evidence was material." (Internal quotation marks omitted.) *State* v. *Ouellette*, 295 Conn. 173, 185, 989 A.2d 1048 (2010).

"The state's failure to disclose an agreement with a cooperating witness may be deemed to be the withholding of exculpatory evidence. Impeachment evidence falls within *Brady*'s definition of evidence favorable to an accused. . . . Impeachment evidence is broadly defined in this context as evidence that could potentially alter the jury's assessment of a witness' credibility. . . . Specifically, we have noted that [a] plea agreement between the state and a key witness is impeachment evidence falling within the . . . *Brady* doctrine." (Citations omitted; internal quotation marks omitted.) *Marquez* v. *Commissioner of Correction*, 330 Conn. 575, 592, 198 A.3d 562 (2019).

"The [United States] Supreme Court established a framework for the application of *Brady* to witness plea agreements in *Napue* v. *Illinois*, 360 U.S. 264, 79 S. Ct. 1173, 3 L. Ed. 2d 1217 (1959), and *Giglio* v. *United States*, 405 U.S. 150, 92 S. Ct. 763, 31 L. Ed. 2d 104 (1972). . . . Drawing from these cases, this court has stated: [D]ue process is . . . offended if the state, although not soliciting false evidence, allows it to go uncorrected when it appears. . . . If a government witness falsely denies having struck a bargain with the state, or substantially mischaracterizes the nature of the inducement, the state is obliged to correct the misconception. . . . Regardless of the lack of intent to lie on the part of the witness, *Giglio* and *Napue* require

that the prosecutor apprise the court when he knows that his witness is giving testimony that is substantially misleading." (Internal quotation marks omitted.) *Diaz* v. *Commissioner of Correction*, 174 Conn. App. 776, 795–96, 166 A.3d 815, cert. denied, 327 Conn. 957, 172 A.3d 204 (2017).

"The prerequisite of any claim under the *Brady, Napue* and *Giglio* line of cases is the existence of an undisclosed agreement or understanding between the cooperating witness and the state. . . . Normally, this is a fact based claim to be determined by the trial court, subject only to review for clear error." (Citations omitted.) *State* v. *Ouellette*, supra, 295 Conn. 186–87. "[T]he burden is on the defendant to prove the existence of undisclosed exculpatory evidence." *State* v. *Floyd*, 253 Conn. 700, 737, 756 A.2d 799 (2000).

I

In rejecting the petitioner's due process claim, the court found that the petitioner had not met his burden of establishing that an implied or express agreement existed between the state and Hall and Jackson regarding their testimony at the petitioner's criminal trial. On appeal, the petitioner claims that finding is clearly erroneous. We disagree.

"[W]here the factual basis of the court's decision is challenged we must determine whether the facts set out in the memorandum of decision are supported by the evidence or whether, in light of the evidence and the pleadings in the whole record, those facts are clearly erroneous. That is the standard and scope of this court's judicial review of decisions of the trial court. Beyond that, we will not go. . . . A finding of fact is clearly erroneous when there is no evidence in the record to support it . . . or when although there is evidence to support it, the reviewing court on the entire evidence

is left with the definite and firm conviction that a mistake has been committed." (Internal quotation marks omitted.) Id., 737–38.

The petitioner's claim concerns Hall and Jackson, two accomplices in the May 23, 2005 homicide who testified on behalf of the state at his criminal trial. Following the petitioner's conviction, Hall pleaded guilty to conspiracy to commit robbery in the first degree in violation of §§ 53a-48 (a) and 53a-134 (a) (4), and received a suspended sentence of ten years of incarceration with five years of probation. Jackson testified at the habeas trial that he also pleaded guilty and received a sentence of twelve years of incarceration, execution suspended after thirty months, with five years of probation. The petitioner claims that the leniency of those sentences was the result of an agreement with the state in exchange for Hall's and Jackson's testimony.

In its memorandum of decision, the court detailed the following relevant facts, all of which find support in the transcripts and exhibits before us. "Both Hall and Jackson testified in the petitioner's criminal trial. Both testified on cross-examination that they did not expect a benefit from their testimony. The petitioner's [criminal] trial attorney, Attorney [Robert] Meredith, cross-examined both Hall and Jackson about the benefits they would receive for their testimony in the petitioner's criminal case. Attorney Meredith also questioned Hall on the bond modification that the prosecutor, Attorney Carlson, did not object to. Hall denied that the bond modification was part of a deal for his testimony at the petitioner's criminal trial.

"At the petitioner's criminal trial and at the habeas trial, Jackson testified and denied any agreement with the state for a more lenient sentence in exchange for his testimony at the petitioner's criminal trial. . . .

Attorney Carlson testified credibly at the habeas trial, and he denied he offered any type of agreement, either explicit or implicit, to Attorney Parker or Attorney Weingast for their respective clients' testimony in the petitioner's criminal case. . . . Attorney Carlson testified that Attorney Parker approached him and said his client, Jackson, was willing to plead guilty to his charges and was willing to testify. . . . Attorney Carlson found that Attorney Parker's offer on his client's behalf was uncommon. . . . Attorney Carlson's testimony denied the occurrence of 'wink and nod type of deals' between a prosecutor and a defendant, whereby the state would agree to speak with the judge at sentencing and to help a cooperating defendant without disclosing such agreement on the record. . . .

"Both Hall['s] and Jackson's attorneys testified at the habeas trial. Attorney Parker credibly denied any deals with the state for Jackson's testimony. Hall's attorney, Attorney Weingast, testified that Hall's involvement in the robbery and murder was minor, but Hall had significant exposure after being charged as a coconspirator. Attorney Weingast testified inconsistently that there was a promise that was either explicit or implicit for Hall's cooperation. Basically, the [promise] testified to by Attorney Weingast, was that Hall's sentencing judge would be made aware that Hall had cooperated in the petitioner's criminal trial. . . . However, on redirect, Attorney Weingast testified that 'the [agreement with the state] wasn't an explicit promise but based on my experience . . . and that [Hall's] cooperation would be brought to the attention [of] the sentencing judge.' . . . Attorney Weingast testified that, '[b]ased on my experience and what I'd seen in other cases, I was confident that my client would get very beneficial treatment as a result of his cooperation.' . . . On further questioning, Attorney Weingast was unable to describe the agreement between his client and the prosecutor. The court

finds that it was Attorney Weingast's hope and expectation that his client would benefit from testifying in the petitioner's criminal case, but that does not suffice to show that an agreement existed. Attorney Carlson testified that, as the coconspirators' case unfolded, he believed that Hall and Jackson were less culpable actors in the robbery and murder of [the victim], but Attorney Carlson did not consider Hall's and Jackson's sentencings until well after the petitioner and France were convicted." (Citations omitted.)

It is axiomatic that, as an appellate tribunal, "[t]his court does not retry the case or evaluate the credibility of the witnesses. . . . Rather, we must defer to the [habeas court's] assessment of the credibility of the witnesses based on its firsthand observation of their conduct, demeanor and attitude. . . . The habeas judge, as the trier of facts, is the sole arbiter of the credibility of witnesses and the weight to be given to their testimony." (Internal quotation marks omitted.) *Brown* v. *Commissioner of Correction*, 179 Conn. App. 358, 366–67, 179 A.3d 794, cert. denied, 328 Conn. 919, 181 A.3d 91 (2018). In the present case, the court credited the habeas trial testimony of Jackson, Attorney Parker, and Attorney Carlson that there was no agreement, inducement, or promise offered by the state in exchange for Hall's and Jackson's testimony at the petitioner's criminal trial.

The court further declined to credit Attorney Weingast's testimony that "there was a promise that was either explicit or implicit for Hall's cooperation" therein. In so doing, the court specifically found that Attorney Weingast had testified "inconsistently" on that issue. The transcripts before us substantiate that finding. At the habeas trial, Attorney Weingast testified that it was his expectation that Hall would receive a benefit for his testimony at the petitioner's trial, stating: "Based on my experience and what I'd seen in other cases,

I was confident that [Hall] would get very beneficial treatment as a result of his cooperation." In addition, Attorney Weingast testified that there was never an explicit promise or assurance of beneficial treatment from the state. Given that inconsistent testimony, the court found that "it was Attorney Weingast's hope and expectation that his client would benefit from testifying in the petitioner's criminal case, but that does not suffice to show that an agreement existed."[7]

In light of the foregoing, the court concluded that the petitioner had failed to establish that an implied or express agreement existed between the state and Hall and Jackson regarding their testimony at the petitioner's criminal trial. Because that determination finds support in the record before us, we conclude that it is not clearly erroneous.

## II

The petitioner also claims that the court erroneously found that a modification to Hall's bond did not constitute a benefit given to that witness in exchange for his testimony. We do not agree.

The following additional facts are relevant to that claim. Following his arrest related to the May 23, 2005

---

[7] As our Supreme Court has observed, "[i]t is well established that a prosecutor's intention to recommend a specific sentence for a cooperating witness is not subject to *Brady* if the intention has not been disclosed to the witness. See, e.g., *Shabazz* v. *Artuz*, 336 F.3d 154, 165 (2d Cir. 2003) ('[t]he government is free to reward witnesses for their cooperation with favorable treatment in pending criminal cases without disclosing to the defendant its intention to do so, *provided* that it does not promise anything to the witnesses prior to their testimony' . . . ); *Diaz* v. *Commissioner of Correction*, [supra, 174 Conn. App. 798] ('Any . . . understanding or agreement between any state's witness and the state police or the state's attorney clearly falls within the ambit of *Brady* principles. . . . An unexpressed intention by the state not to prosecute a witness does not.' . . . )." (Emphasis in original.) *Greene* v. *Commissioner of Correction*, 330 Conn. 1, 29–30, 190 A.3d 851 (2018), cert. denied sub nom. *Greene* v. *Semple*,      U.S.     , 139 S. Ct. 1219, 203 L. Ed. 2d 238 (2019).

homicide, Hall was placed on a $750,000 cash or surety bond. While the petitioner's case was pending, Attorney Weingast filed a motion for a bond modification on behalf of Hall. The state did not object to that request, and Hall's bond was reduced to $100,000 cash. Hall's parents then posted the bond, and Hall was released from custody.

At the habeas trial, the petitioner argued that the modification of Hall's bond constituted a benefit from the state in exchange for his testimony at the petitioner's criminal trial. The petitioner, however, presented little evidence on that issue. Hall did not testify at the habeas trial, and Attorney Weingast was not questioned on that issue. The only evidence presented to the court on the issue of Hall's bond modification was Hall's testimony from the petitioner's criminal trial and Attorney Carlson's testimony at the habeas trial. During the petitioner's criminal trial, Hall was cross-examined by defense counsel and asked if the modification of his bond constituted a benefit to him. In response, Hall testified that he would have been released on bond "regardless" of whether his bond was modified.

Attorney Carlson similarly testified at the habeas trial that Hall had indicated, at the time of the petitioner's criminal trial, that his father was "going to be able to [post his bond] whether it's cash or a surety." Attorney Carlson also explained that he did not object to Attorney Weingast's motion for a bond modification because, in his view, there was not "much difference between [a] $750,000 surety and $100,000 cash, so it didn't make a lot of difference because [Attorney] Weingast said either way my client's father can and will make that bond." The court credited that testimony, as was its exclusive prerogative as the arbiter of credibility, and found that "Hall's family was going to pay the surety or put up the cash themselves to have Hall released pending resolution of the charges against him."

We conclude that the record before us contains evidence to support the court's finding that Hall's bond modification was not a benefit given to Hall in exchange for his testimony at the petitioner's trial. That finding, therefore, is not clearly erroneous.[8]

## III

The petitioner's remaining claim is that the court improperly concluded that his due process rights were not violated by the state's failure to correct misleading testimony. Because an essential predicate to such a claim is lacking, we disagree.

During the petitioner's criminal trial, Hall and Jackson testified that they did not expect to receive a benefit from the state in exchange for their testimony. The petitioner contends that this testimony was misleading, arguing that Hall and Jackson had an agreement with the state for leniency in sentencing. The petitioner also contends that Hall received an additional benefit when the state did not object to the modification of his bond. He thus maintains that the state's failure to correct Hall and Jackson's testimony at his criminal trial constitutes a due process violation under the *Brady, Napue* and *Giglio* line of cases. See *Diaz* v. *Commissioner of Correction*, supra, 174 Conn. App. 795–96.

His claim requires little discussion. In parts I and II of this opinion, we concluded that the court's findings that no agreement existed between the state and Hall and Jackson for leniency in sentencing and that Hall's

---

[8] Even if we were to conclude otherwise, the petitioner could not prevail. As the transcripts of the petitioner's criminal trial reflect, defense counsel was aware that a modification of Hall's bond had occurred, and he cross-examined Hall thereon. For that reason, the petitioner cannot establish a *Brady* violation. See, e.g., *Young* v. *Commissioner of Correction*, 219 Conn. App. 171, 189, 294 A.3d 29 ("[i]t is axiomatic that [e]vidence known to the defendant or his counsel, or that is disclosed, even if during trial, is not considered suppressed as that term is used in *Brady*" (internal quotation marks omitted)), cert. denied, 347 Conn. 905, 297 A.3d 567 (2023).

bond reduction did not constitute a benefit given in exchange for his testimony were not clearly erroneous. Because the testimony of Hall and Jackson in question was not misleading, the petitioner's due process claim is untenable.

The judgment is affirmed.

In this opinion the other judges concurred.