RICHARD POMMER *v.* COMMISSIONER
OF CORRECTION
(AC 31250)

Bishop, Beach and Flynn, Js.

---

Argued October 21—officially released December 14, 2010

*Joseph Visone*, special public defender, for the appellant (petitioner).

*Laurie N. Feldman*, special deputy assistant state's attorney, with whom, on the brief, were *Michael Dearington*, state's attorney, and *Linda N. Howe*, former senior assistant state's attorney, for the appellee (respondent).

### Opinion

FLYNN, J. The petitioner, Richard Pommer, appeals following the denial of certification to appeal from the judgment of the habeas court denying his petition for a writ of habeas corpus. On appeal, the petitioner claims that the court improperly (1) concluded that he had not been deprived of his right to effective counsel, and (2) allowed a witness, Charles (Chaz) Poole, to invoke the fifth amendment to four separate questions while still answering others. We conclude that the habeas court did not abuse its discretion in denying certification to appeal and dismiss the appeal.

The petitioner was convicted after a jury trial of one count of robbery in the first degree in violation of General Statutes § 53a-134 (a) (3), one count of robbery in

the second degree in violation of General Statutes § 53a-135 (a) (2) and one count of tampering with a witness in violation of General Statutes § 53a-151 (a). He appealed his judgment of conviction of tampering with a witness, and this court affirmed that judgment. *State* v. *Pommer*, 110 Conn. App. 608, 955 A.2d 637, cert. denied, 289 Conn. 951, 961 A.2d 418 (2008). In his direct appeal we summarized the facts as follows. "On October 19, 2003, two individuals were robbed in New Haven by the [petitioner], Chaz Poole and James Draughn. Melissa Fragola, the girlfriend of Poole, drove the getaway car. New Haven police were able to obtain Fragola's photograph from a videotape showing her using one of the victim's stolen credit cards at a gasoline station and disseminated copies to local television news bureaus. When Fragola saw her photograph on a news broadcast, she informed Poole and indicated that she would turn herself in to the police. When Fragola went to the Hamden police station with Poole, she was sent back home. The following day, New Haven police officers came to her residence and brought her to their station where she provided a taped statement. On her second and third visit to the police station, Fragola selected the [petitioner's] and Draughn's photographs, identifying them as participants in the robbery. After Fragola's photograph had been broadcast, the [petitioner] telephoned Poole and informed him of the broadcasting and that Fragola had turned herself in to the police and implicated the participants in the robbery. The [petitioner] inquired of Poole as to whether he also would go to the police. When Poole replied in the affirmative, the [petitioner] was not happy and indicated to Poole that he loved him like a brother, but if Poole went to the police, it would be '[Poole's] ass.' " Id., 611. Additional facts will be supplied as necessary.

Where a habeas court has denied certification to appeal, our Supreme Court has conditioned review on a

demonstration by the appellant on a abuse of discretion standard. *Taylor* v. *Commissioner of Correction*, 284 Conn. 433, 448–49, 936 A.2d 611 (2007). However, the Supreme Court has determined that appellate review is necessary if the appellant can show that the issues are debatable among jurists of reason, that a court could resolve the issues in a different manner, or the questions are adequate to deserve encouragement to proceed further. See *Simms* v. *Warden*, 229 Conn. 178, 189–90 n.16, 640 A.2d 601 (1994). "When reviewing the decision of a habeas court, the facts found by the habeas court may not be disturbed unless the findings were clearly erroneous. . . . The issue, however, of [w]hether the representation [that] a defendant received at trial was constitutionally inadequate is a mixed question of law and fact. *Strickland* v. *Washington*, [466 U.S. 668, 698, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984)]. As such, that question requires plenary review by this court unfettered by the clearly erroneous standard." (Internal quotation marks omitted.) *Johnson* v. *Commissioner of Correction*, 288 Conn. 53, 62, 951 A.2d 520 (2008). Under the *Strickland* standard, when a petitioner alleges ineffective assistance of counsel, he must establish that "(1) counsel's representation fell below an objective standard of reasonableness, and (2) counsel's deficient performance prejudiced the defense because there was a reasonable probability that the outcome of the proceedings would have been different had it not been for the deficient performance." (Internal quotation marks omitted.) Id., 63.

The petitioner first claims that his trial counsel was ineffective in not calling Darryl Walker as a witness. He argued to the habeas court that had Walker been called as a witness, in the words of the habeas court, "the testimony of Chaz Poole would have been exposed as a lie and not worthy of belief." The petitioner was represented at trial by Donald Dakers, an attorney who

previously had tried numerous cases to jury verdict. At the outset, it is important to note that the petitioner first denied any involvement in the robbery to Dakers, and, accordingly, Dakers prepared for trial on that theory of defense. The petitioner also gave Dakers the names of alibi witnesses to buttress this story, but neither Dakers, nor his investigator could reach any of them. As a part of his trial preparation, Dakers learned from the state's attorney's office that it had a recording of a telephone conversation that the petitioner made to his mother from the jail in which he admitted being at the scene of the robbery. Shortly before the trial was to begin, the petitioner informed Dakers that he was at the robbery scene but had not been a participant. Dakers, having been preparing for trial on the theory that the petitioner was not at the crime scene, was required by the petitioner's change of story to shift strategy and to prepare another theory of defense, namely, that the testimony of Poole, Fragola and other witnesses, which inculpated the petitioner, should not be believed. The petitioner did not testify at his criminal trial but gave Dakers the names of two defense witnesses, Samantha Gravline and his sister. He did not give Dakers the name of Walker until after the trial. Walker was a convicted felon, related to and friendly with the petitioner. At the habeas trial, Walker testified that he was incarcerated at the time of the robbery and after his release claimed to have discussed with Poole the petitioner's involvement in the crime. He also claimed to have called Dakers' law office once before the petitioner's trial, left a message, but that the call was not returned. The habeas court, however, did not find as a fact that such a call was made. The evidentiary record of the petitioner's criminal trial was entered into evidence at the habeas trial. The evidentiary record of the petitioner's criminal trial contained the following pertinent evidence.

The male victim saw three people walking in the opposite direction from him and his companion. Shortly after seeing the three, he was tackled from behind and landed on his back. One of the three who was closest to him and his companion wore a hooded jacket and held a black gun. That person hit him with the butt of the gun when he tried to get up and then demanded his wallet. After the male victim turned over his wallet to the person with the gun and the female victim turned over her pocketbook, the three people ran away. The male victim described the gunman as about five feet, eleven inches in height and heavily built, and said that the other two persons who ran away were smaller. The following day, the two victims walked in the nearby area and found a gun that the male victim thought was the one with which he had been threatened. At his trial, both Fragola and Poole implicated the petitioner in the robbery. Fragola testified that she brought Poole, Draughn and the petitioner to the scene and that she knew that they intended to commit a robbery of the couple who were walking down the street. Poole testified that it was the petitioner who was armed with a BB gun designed to look like a pistol and robbed the two victims.

The habeas court found that Dakers' representation was not ineffective. However, the habeas court principally used *Strickland*'s second prong, namely, that the petitioner had failed to convince the habeas court that he had suffered any prejudice because even if Poole's testimony was rejected in its entirety, there was "more than sufficient surviving testimony to lead a jury to conclude that the defendant was guilty." We agree. The victims were certain that three men attacked them and that the biggest of them had the gun. The male victim testified that the gunman wore a hood. The male victim also testified that the two men without the gun were both smaller compared to the individual who wielded

the gun. The male victim also said that he was five feet, nine inches tall and that the gunman was "a couple of inches taller than me." The female victim testified that she was five feet, seven inches and five feet, nine inches with heels, and that the gunman was "quite a bit bigger." Fragola also told the jury that the petitioner and Draughn wore hoods. She testified that Poole was wearing a zip up jacket that did not have a hood. Fragola also testified that Draughn was skinny and only around five feet, six inches or five feet, seven inches tall. Fragola had testified that when the petitioner, Poole and Draughn rode in her car after stopping at a person named Samantha's house, it was the petitioner who had the black BB gun that looked like a pistol. As the four drove through New Haven, she saw two people walking on Willow Street. Fragola told the jury that it was the petitioner who told her to stop the car near Willow Street and Whitney Avenue, that the petitioner, Poole and Draughn exited her automobile and the petitioner was in possession of the gun. She testified that all three men proceeded to walk down Willow Street. Fragola said that after leaving the three men off, she drove around and eventually picked up Poole and then the petitioner and went back with them to her home. She saw the petitioner with a female's wallet and credit cards. She used one of the credit cards in a female's name to buy gasoline and snacks at a Mobil station and both the petitioner and Poole were in her automobile. There was thus independent evidence from Fragola that only the petitioner and Draughn wore hooded jackets, but that Draughn was smaller than the petitioner, that the petitioner possessed the gun immediately before the robbery occurred and possessed the fruits of the robbery immediately after, including the female victim's wallet and credit cards. The habeas court also had before it the conviction of the petitioner which had been affirmed on appeal, for tampering with a witness,

Poole, by threatening Poole if he went to the police and implicated the petitioner. There was thus sufficient direct and circumstantial evidence to lead the jury to the conclusion that the petitioner was guilty, even without Poole's testimony. The petitioner has failed to satisfy his burden to show that Dakers' representation was constitutionally ineffective or that he was prejudiced by Dakers' representation.

We next turn to the petitioner's claim that it was improper for the habeas court to permit Poole, over the petitioner's objection, selectively to invoke his privilege against self-incrimination pursuant to the fifth amendment to the United States constitution during direct examination by the petitioner's counsel in the habeas case. Certain portions of the dialogue on direct examination in which Poole invoked the privilege only as to certain questions are pertinent.

When asked if Poole testified at the criminal trial that the petitioner was the individual who body checked, or knocked over the two victims during the robbery, and hit one of them, specifically, the male victim, in the head, Poole, on the advice of counsel, invoked his fifth amendment privilege. Poole did respond to the next question and testified that he told his cousin, Walker, that the petitioner had nothing to do with the robbery. When asked if he testified truthfully at trial, specifically, that he stood in the middle of the street while the petitioner and Draughn approached the two victims, Poole reasserted his fifth amendment privilege. When asked if he recalled at any time after Walker was released from prison and before the trial in 2005, if he told Walker that he felt guilty for putting the blame on the petitioner because he was not involved and that Poole had committed this crime, alone, Poole's response was that only half of that was true in that he felt bad for blaming the petitioner. When asked why he

felt bad for the petitioner, he invoked his fifth amendment privilege. Poole admitted that he told Walker that he did whatever he had to do to stay out of jail because he was frightened by the New Haven police telling him that he would do twenty years for the robbery and he would never see his child again. When asked if anyone representing the petitioner approached him for an interview, he said that no one had but that he wished that someone did. When asked why he wanted to speak to someone representing the petitioner, Poole, on the advice of his attorney, reasserted his fifth amendment privilege.

The petitioner argues essentially that when Poole testified on direct examination without having first invoked his privilege not to testify at all, he had waived the fifth amendment privilege and that, therefore, the court's permitting him to answer some questions but allowing him to refuse to answer others by invoking the fifth amendment was improper. He further argues that a witness, in a single proceeding, may not testify voluntarily about a subject and then invoke the privilege against self-incrimination when questioned about the details, citing *Mitchell* v. *United States*, 526 U.S. 314, 119 S. Ct. 1307, 143 L. Ed. 2d 424 (1999). He asserts that the *Mitchell* court provided a logical rationale for its rule when it stated that a contrary rule "would open the way to distortion of facts by permitting a witness to select any stopping place in the testimony . . . ." (Citation omitted; internal quotation marks omitted.) Id., 322. While this general rule admits of certain exceptions, we note that the petitioner did not ask that all of Poole's testimony be struck because, although the privilege was exercised on the petitioner's direct examination of a hostile witness, it was the equivalent of cross-examination directed at proving Poole himself was the principal robber. We also note, that although the petitioner claims that Poole, in effect, waived the

privilege against incriminating himself, he did not ask the court to hold Poole in contempt for refusal to answer the questions. See *Brown* v. *United States*, 356 U.S. 148, 78 S. Ct. 622, 2 L. Ed. 2d 589 (1958). He also claims that because a habeas corpus proceeding is civil in nature an unfavorable inference should be drawn against Poole, namely, that he was lying in his trial testimony in which he accused the petitioner of being the robber of the two victims who hit one of them with his gun while Poole only stood by in the middle of the road. However, the record is silent as to whether the habeas judge did or did not make such an inference and, thus, that claim is unreviewable.

Finally, the linchpin of the petitioner's argument is that without Poole's testimony, it is debatable among jurists of reason whether the petitioner could have been convicted at his criminal trial and that, therefore, there was prejudice to the petitioner from the habeas court's ruling permitting Poole selectively to invoke the privilege against self-incrimination. We see a flaw in this argument. The habeas court found that even without Poole's testimony, the petitioner would have been convicted and that, therefore, there was no prejudice to the petitioner. A petitioner's challenge to findings of fact made by a habeas court cannot be disturbed on appeal unless they are clearly erroneous. *Harris* v. *Commissioner of Correction*, 107 Conn. App. 833, 838, 947 A.2d 7, cert. denied, 288 Conn. 908, 953 A.2d 652 (2008). A finding of fact is clearly erroneous when there is no evidence to support it, or when there is evidence to support it, the reviewing court based on the entire evidence in the record is of the firm conviction that a mistake has been committed. Id. Upon the whole record, we conclude that the petitioner has failed to show that the habeas court's finding was clearly erroneous.

The appeal is dismissed.

In this opinion the other judges concurred.