## JOSHUA SMITH *v.* COMMISSIONER OF CORRECTION
### (AC 33418)

Bear, Espinosa and Borden, Js.*

---

* The listing of judges reflects their seniority status on this court as of the date of oral argument.

Argued November 28, 2012—officially released April 2, 2013

*Darcy McGraw*, assistant public defender, for the appellant (petitioner).

*Sarah Hanna*, assistant state's attorney, with whom, on the brief, were *David I. Cohen*, state's attorney, and *Michael Porto* and *Brenda Hans*, assistant state's attorneys, for the appellee (respondent).

*Opinion*

BORDEN, J. The petitioner, Joshua Smith, appeals from the judgment of the habeas court denying his third amended petition for a writ of habeas corpus. The petitioner claims that the court improperly concluded that at his criminal trial: (1) he received effective assistance of counsel; and (2) there was no *Brady*[1] violation. We affirm the judgment of the habeas court.

The facts giving rise to this case are set forth in *State v. Smith*, 46 Conn. App. 600, 601, 700 A.2d 91, cert. denied, 243 Conn. 935, 702 A.2d 642 (1997). "On February 11, 1994, the victim, Devon Laidley, and his girlfriend, Tonia McKoy, were at a house at 167 South Main Street in the city of Norwalk. The [petitioner] arrived at the residence, stood on the front porch and engaged in a conversation with a friend, Willis Heron. Subsequently, the victim emerged from the residence and walked down the driveway toward a gate near the front sidewalk. Suddenly, the [petitioner] jumped off the porch, pulled out a gun and fired at the victim, who was standing at the gate. When the shots were fired, the victim tried to run away from the [petitioner]. The [petitioner], still firing his gun, pursued the victim. When the victim stumbled and fell to the ground, the [petitioner] approached him and fired the gun at him two or three more times at close range. In total, the [petitioner] fired approximately nine to twelve shots at the victim. The victim later died, and an autopsy

---

[1] *Brady* v. *Maryland*, 373 U.S. 83, 87, 83 S. Ct. 1194, 10 L. Ed. 2d 215 (1963).

revealed that he was hit by eight bullets, one of which pierced his heart. Both Heron and McKoy witnessed the killing." Id., 601–602.

In the underlying criminal trial, the petitioner was represented by attorney Michael Sherman (trial counsel). Both McKoy and Heron testified at trial that they knew the petitioner prior to the murder and positively identified him as the gunman. Id., 608. After a jury trial, the petitioner was convicted of murder in the first degree in violation of General Statutes § 53a-54 (a). Id., 601. The court sentenced the petitioner to a total effective sentence of forty-five years incarceration. The petitioner filed a direct appeal from that judgment, which was affirmed by this court. Id., 609.

On September 11, 2009, the petitioner filed this third amended petition for a writ of habeas corpus. In it, he alleged that his trial counsel had rendered ineffective assistance in failing to investigate adequately and to present certain witnesses and evidence.[2] He further alleged that the prosecutor committed a *Brady* violation by failing to disclose certain exculpatory photographs. After a trial, the habeas court issued its memorandum of decision denying the petition, finding that "the petitioner has failed in submitting persuasive evidence to meet his burden of proof . . . ." On March 28, 2011, the habeas court granted the petitioner's petition for certification to appeal. This appeal followed. Additional facts will be set forth as necessary.

[2] In his petition, the petitioner also asserted a claim of ineffective assistance of counsel in that his trial counsel failed to advise him that he was eligible to apply for sentence review. During the habeas hearing, this claim was neither raised nor addressed, and no evidence was adduced about the claim. Therefore, the claim is deemed abandoned. *Wooten* v. *Commissioner of Correction*, 104 Conn. App. 793, 801, 936 A.2d 263 (2007) (claim deemed "abandoned because the petitioner failed to present any evidence in support of his position"), cert. denied, 289 Conn. 911, 957 A.2d 868 (2008). The petitioner does not raise any issues on appeal pertaining to this claim.

## I

The petitioner first claims that he did not receive effective assistance of counsel because his trial counsel failed to investigate, locate and present a multitude of witnesses during the petitioner's underlying criminal trial. The petitioner asserts that these witnesses could have been used to impeach the testimony of the state's eyewitnesses that he was the shooter. The petitioner also claims that the habeas court improperly concluded that his trial counsel did not have a duty to investigate further after the petitioner provided an alibi defense that proved not viable. We disagree.

## A

We first address the petitioner's contention that his trial counsel was deficient in that he failed to present several witnesses at his criminal trial. The following additional facts are relevant to this claim. At the habeas trial, the petitioner's habeas counsel produced a total of twenty-seven witnesses, but only a few whose testimony is relevant to this claim. First, an affidavit, purportedly signed by Paul Gayle, stating that the petitioner was not the shooter, was entered as an exhibit. Gayle, however, invoked his fifth amendment privilege as to his recollection of the night of the murder and also was unable to remember the contents of the affidavit or its execution. Second, David Hamilton testified that he was near the scene of the crime when he heard gunshots and took cover behind a vehicle. After the shooting stopped, Hamilton saw a six feet, two inches to six feet, three inches tall, thin individual running from the scene with a gun. Hamilton testified that the shooter was not the petitioner, whom he described as "short and kind of stocky." He further testified that, although he saw that the individual was black, he could not make out any features and "definitely wouldn't be able to identify the shooter." Third, Shannon McKoy, Tonia McKoy's

cousin, testified that, at the time of the shooting, she was in the house and did not see the shooter. Shannon McKoy testified that, prior to the shooting, several individuals were gathered on or near the porch of the house, and she did not remember seeing the petitioner. She also testified that she could not "definitely say" that the petitioner was on the porch because he looked similar to three other individuals of Jamaican descent whom she knew.

The habeas court denied the petition for a writ of habeas corpus, concluding that the petitioner failed to support his claim that his trial counsel had conducted an inadequate investigation and that the "strategic and tactical decisions of counsel, as well as the manner in which he carried them out [were] within the acceptable range of performance." The habeas court also concluded that the petitioner failed to meet his burden of proving prejudice, reasoning that "[t]he evidence presented at the habeas trial by the petitioner was individually and collectively unimpressive and, in large part, useless because the 'witnesses' were unable, or unwilling, to definitively place themselves at the murder scene, could not recall what took place, or refused to provide testimony."

We begin with our well established standard of review. "The habeas court is afforded broad discretion in making its factual findings, and those findings will not be disturbed unless they are clearly erroneous. . . . Accordingly, [t]he habeas judge, as the trier of facts, is the sole arbiter of the credibility of witnesses and the weight to be given to their testimony. . . . The application of the habeas court's factual findings to the pertinent legal standard, however, presents a mixed question of law and fact, which is subject to plenary review." (Citations omitted; internal quotation marks omitted.) *Gaines* v. *Commissioner of Correction*, 306 Conn. 664, 677, 51 A.3d 948 (2012).

"When a [petitioner] complains of the ineffectiveness of counsel's assistance, the [petitioner] must show that counsel's representation fell below an objective standard of reasonableness." *Strickland* v. *Washington*, 466 U.S. 668, 687–88, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984). "A [petitioner's] claim that counsel's assistance was so defective as to require a reversal of the conviction . . . has two components. First, the [petitioner] must show that counsel's performance was deficient. . . . Second, the [petitioner] must show that the deficient performance prejudiced the defense. . . . Unless a [petitioner] makes both showings, it cannot be said that the conviction . . . resulted from a breakdown in the adversary process that renders the result unreliable." (Internal quotation marks omitted.) *Holley* v. *Commissioner of Correction*, 62 Conn. App. 170, 172–73, 774 A.2d 148 (2001). "[A] court need not determine whether counsel's performance was deficient before examining the prejudice suffered by the [petitioner] as a result of the alleged deficiencies. The object of an ineffectiveness claim is not to grade counsel's performance. If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice . . . that course should be followed." (Internal quotation marks omitted.) *Constantopoulos* v. *Commissioner of Correction*, 47 Conn. App. 828, 833, 708 A.2d 588, cert. denied, 244 Conn. 927, 711 A.2d 726 (1998).

In the present case, the petitioner cannot prevail on the prejudice prong of the *Strickland* test. As the habeas court noted, the testimony of the witnesses who the petitioner says "should have been interviewed and would have changed the outcome [was] vague, contradictory and simply not exculpatory." "This court does not retry the case or evaluate the credibility of the witnesses. . . . Rather, we must defer to the [trier of fact's] assessment of the credibility of the witnesses based on its firsthand observation of their conduct,

demeanor and attitude." (Internal quotation marks omitted.) *Greene* v. *Commissioner of Correction*, 96 Conn. App. 854, 857, 902 A.2d 701, cert. denied, 280 Conn. 916, 908 A.2d 536 (2006). Without a persuasive showing in this court that the habeas court's critical finding, namely, that these witnesses were "individually and collectively unimpressive and, in larger part, useless" is clearly erroneous, we will not disturb the habeas court's finding in this regard.

The petitioner cites *Bryant* v. *Commissioner of Correction*, 290 Conn. 502, 509, 964 A.2d 1186, cert. denied sub nom. *Murphy* v. *Bryant*, 558 U.S. 938, 130 S. Ct. 259, 175 L. Ed. 2d 242 (2009), in support of his argument that he was prejudiced by his trial counsel's failure to locate and interview witnesses who could have provided testimony to support a third party culpability defense. In *Bryant*, the habeas court found that the testimony of several highly credible witnesses would have worked in concert to create a credible scenario wherein the petitioner was not the cause of the victim's death. Id., 510-11. The witnesses in the present case, however, are distinguishable from the witnesses in *Bryant*, who provided considerable and compelling testimony that directly connected a third party to the crime and "[a]s a result, the court found that a jury likewise would have found their testimony to be credible and highly persuasive." (Internal quotation marks omitted.) Id., 511. Here, the plaintiff produced one witness, Hamilton, who testified that he saw a tall, thin black man, who was not short and stocky like the petitioner, leave the scene of the crime with a gun, and another witness, Shannon McKoy, who could not definitely place the petitioner at the scene before the shooting. Neither of those witnesses, or any of the other twenty-five witnesses at the habeas trial, provided testimony that could support "[a] third party culpability defense . . . [that] likely would have permeated to some degree every

aspect of the trial and raised a reasonable doubt in the minds of the [jurors] as to the petitioner's guilt." Id., 523. In fact, none of the witnesses implicated another person as the shooter; at best, their testimony showed inconsistencies in the perceived height of the shooter, which is cumulative of testimony that was introduced at trial.[3] See *Dunkley* v. *Commissioner of Correction*, 73 Conn. App. 819, 827, 810 A.2d 281 (2002) (no evidence to support third party claim, in part, because no one at crime scene implicated alleged third party), cert. denied, 262 Conn. 953, 818 A.2d 780 (2003).

The petitioner further argues that the habeas court failed to consider the attestation of Paul Gayle that he knew the petitioner and observed the shooting, and that the petitioner was not the shooter. The petitioner fails to reconcile Gayle's affidavit, however, with Gayle's further testimony at the habeas trial where he invoked his fifth amendment privilege as to his recollection of the night of the murder and was also unable to remember the contents of the affidavit or its execution. See *Daniel* v. *Commissioner of Correction*, 57 Conn. App. 651, 684, 751 A.2d 398 (testimony not sufficient to raise third party culpability defense because supporting witnesses' statements were inconsistent), cert. denied, 254 Conn. 918, 759 A.2d 1024 (2000).

The petitioner has failed to demonstrate a reasonable probability that the outcome of his trial would have been different had his trial counsel called the additional witnesses. See, e.g., *Pommer* v. *Commissioner of Correction*, 125 Conn. App. 519, 524, 8 A.3d 556 (2010)

---

[3] At the petitioner's criminal trial, James Henry, Jr., and his father, James Henry, Sr., both testified for the defense that from the office of their landscaping business across the street from the scene of the crime, they observed a tall black male shooting at the victim. James Henry, Jr., testified that the person he observed was a six feet, three inches to six feet, four inches tall, slim, black male. James Henry, Sr., testified that he saw a six feet, one inch to six feet, two inches tall, black male.

(petitioner failed to demonstrate prejudice, as element of ineffective assistance claim, from trial counsel's failure to call rebuttal witness to undermine account of events given by prosecution witnesses), cert. denied, 300 Conn. 913, 13 A.3d 1100 (2011). "The failure of defense counsel to call a potential defense witness does not constitute ineffective assistance unless there is some showing that the testimony would have been helpful in establishing the asserted defense. . . . In the absence of that showing by the petitioner, we are unable to conclude that he was prejudiced by counsel's failure to interview the witnesses." (Citations omitted; internal quotation marks omitted.) *Nieves* v. *Commissioner of Correction*, 51 Conn. App. 615, 624, 724 A.2d 508, cert. denied, 248 Conn. 905, 731 A.2d 309 (1999). We conclude that the petitioner has not established that he was prejudiced by the actions of his trial counsel, and, therefore, he cannot prevail on his claim of ineffective assistance of counsel.

## B

The petitioner also claims that the habeas court erroneously ruled that his trial counsel had no further obligation to investigate the case because the petitioner provided him with an alibi defense that ultimately was determined to be not viable. We disagree with the petitioner's characterization of the habeas court's conclusion.

The habeas court did not conclude, as the petitioner contends, that his trial counsel was freed from his obligation to conduct a thorough investigation once he decided that the alibi defense was not viable. Instead, the habeas court simply rejected the petitioner's overall claim that his trial counsel had failed to conduct an adequate pretrial investigation, finding: "It is not enough for a petitioner to come into the habeas court and provide the court with a laundry list of witnesses his lawyer

failed to interview. That, unfortunately, is in essence, what the petitioner has done in this case. The petitioner overlooks the fact that his initial insistence upon telling his lawyer that he had an alibi, diverted his attorney during the pretrial investigation stage. After conducting his investigation, the attorney discovered that the alibi was not viable and did not present that defense, as it would have failed and, in the words of [his trial counsel], been fatal to the defense case." The court's conclusion recognized the well established principle that when considering a claim of ineffective assistance, the court must consider that "[t]he reasonableness of counsel's actions may be determined or substantially influenced by the defendant's own statements or actions. Counsel's actions are usually based, quite properly, on informed strategic choices made by the defendant and on information supplied by the defendant. *In particular, what investigation decisions are reasonable depends critically on such information.* . . . [I]nquiry into counsel's conversations with the defendant may be critical to a proper assessment of counsel's investigation decisions, just as it may be critical to a proper assessment of counsel's other litigation decisions." (Emphasis added.) *Strickland* v. *Washington*, supra, 466 U.S. 691. Further, the habeas court focused its inquiry, as we have, into the effectiveness of the petitioner's trial counsel on the basis of prejudice, not performance, and, thus, never specifically concluded that his trial counsel was freed from his obligation to conduct a thorough investigation.

## II

The petitioner's final claim is that the habeas court erroneously concluded that the petitioner's *Brady* rights were not violated when the state failed to provide photographs from the crime scene that would have undermined Tonia McKoy's testimony of the shooting. The respondent, the commissioner of correction, argues that the petitioner's *Brady* claim was not decided by

the habeas court and, in the alternative, that such evidence is not material. We agree with the respondent that the evidence is not material.

In his petition, the petitioner alleged that the "state failed to disclose to trial counsel photographs of the crime scene that were taken on February 11, 1994." At the habeas trial, the petitioner presented evidence relevant to this claim. James Bernardi, the assistant state's attorney who prosecuted the petitioner in the underlying criminal trial, testified at the habeas trial that the crime scene photographs taken on the night of the crime did not "come out" because of camera malfunction. The petitioner's habeas counsel, however, located the original photographs, and the court admitted them as exhibits during the habeas trial. The photographs showed various objects, namely, large piles of snow, a telephone pole, cars and a closed gate, that the petitioner claims could have been used to cross-examine the state's eyewitness, Tonia McKoy, who testified, at trial, that she had an unobstructed view of the victim and the shooter. The photographs also showed the existence of a black, wool hat that was located in a snow pile next to the crime scene. The hat was recovered from the scene but was not introduced at trial by either the state or the defense. At the habeas trial, the petitioner's habeas counsel asked the petitioner's trial counsel about the hat. Trial counsel replied that he could not remember a hat, but if he had known about the hat he would not have had it tested for DNA. He further stated that if the DNA analysis had implicated the petitioner, it would have been more damaging to the case, and if it did not implicate the petitioner, it would not have exculpated him because the hat was not necessarily connected to the shooter.

The court focused, in its memorandum of decision, on the existence of the hat in the photographs, concluding that the "petitioner's contentions that he would have

been exonerated if the hat were to be tested is simply too speculative to allow this court to take the extraordinary step of vacating the petitioner's conviction." The habeas court, however, made no specific finding as to whether the photographs, if disclosed, would have been helpful to trial counsel in undermining Tonia McKoy's trial testimony, namely, that she saw the shooting. The habeas court, however, did conclude overall that the petitioner did not prove that the failure to disclose the photographs was a *Brady* violation. Although we are not bound to consider an issue unless it appears on the record that the question was distinctly raised at trial and was ruled upon and decided by the court adversely to the appellant's claim; see *Brown* v. *Commissioner of Correction*, 104 Conn. App. 144, 149, 931 A.2d 963, cert. denied, 284 Conn. 937, 937 A.2d 693 (2007); contrary to the respondent's argument, we may not decline to review a claim solely on the basis that the petitioner failed to seek an articulation. See Practice Book § 61-10.[4] Accordingly, we review this claim on the merits.

"Whether the petitioner was deprived of his due process rights due to a *Brady* violation is a question of law, to which we grant plenary review. . . . The conclusions reached by the [habeas] court in its decision to dismiss the habeas petition are matters of law, subject to plenary review. . . . Thus, [w]here the legal conclusions of the court are challenged, we must determine whether they are legally and logically correct . . . and whether they find support in the facts that appear in the record." (Internal quotation marks omitted.) *Hoskie* v. *Commissioner of Correction*, 110 Conn. App. 845, 847–48, 956 A.2d 611, cert. denied, 289 Conn. 950, 960 A.2d 1037 (2008). "To establish a *Brady* violation,

---

[4] Practice Book § 61-10 (b) provides in relevant part: "The failure of any party on appeal to seek articulation pursuant to Section 66-5 shall not be the sole ground upon which the court declines to review any issue or claim on appeal. . . ."

the [petitioner] must show that (1) the government suppressed evidence, (2) the suppressed evidence was favorable to the [petitioner], and (3) it was material [either to guilt or to punishment]." (Internal quotation marks omitted.) *State* v. *Wilcox*, 254 Conn. 441, 452, 758 A.2d 824 (2000).

After reviewing the photographs in light of the petitioner's entire criminal trial, we determine that the petitioner has failed to establish that the missing photographs were material, and, therefore, his claim under *Brady* must fail. "In determining whether evidence is material for *Brady* purposes, the focus is not whether, based upon a threshold standard, the result of the trial would have been different if the evidence had been admitted. We instead concentrate on the overall fairness of the trial and whether nondisclosure of the evidence was so unfair as to undermine our confidence in the jury's verdict. . . .

"It is well established that impeachment evidence may be crucial to a defense, especially when the state's case hinges entirely upon the credibility of certain key witnesses. . . . The rule laid out in *Brady* requiring disclosure of exculpatory evidence applies to materials that might well alter . . . the credibility of a crucial prosecution witness. . . . However, [e]vidence that may first appear to be quite compelling when considered alone can lose its potency when weighed and measured with all the other evidence, both inculpatory and exculpatory. Implicit in the standard of materiality is the notion that the significance of any particular bit of evidence can only be determined by comparison to the rest. . . . In this connection, it is important to the *Brady* calculus whether the effect of any impeachment evidence would have been cured by the rehabilitative effect of other testimony." (Citations omitted; internal quotation marks omitted.) *Morant* v. *Commissioner of*

*Correction,* 117 Conn. App. 279, 296–97, 979 A.2d 507, cert. denied, 294 Conn. 906, 982 A.2d 1080 (2009).

The difficulty with the petitioner's *Brady* claim is that the photographs do not materially impeach Tonia McKoy's testimony. The petitioner asserts that the photographs reveal details about the scene of the crime that would have challenged the reliability of her testimony, namely, large piles of snow, a telephone pole, cars in the driveway and in the road, and a closed gate. This evidence, however, is merely cumulative evidence regarding conditions of the scene that were actually testified to during the criminal trial by the state's eyewitnesses. At the criminal trial, Tonia McKoy testified that there was a car parked in the road in front of the snow pile and the telephone pole between which the victim fell. Thus, the petitioner has failed to demonstrate how the missing photographs would have discredited Tonia McKoy's description of the crime scene because they seemingly conform to her testimony and depict a clear view between the porch of the house and the street. Also, any impeachment effect that the photographs might have had on Tonia McKoy's testimony would have been neutralized by the testimony of the state's other eyewitness, Heron, who stood outside of the house at the time of the shooting. Heron also testified to the car parked in the street at the end of the driveway, the closed gate and the snow pile. Therefore, in light of the evidence by both eyewitnesses regarding the conditions of the scene of the crime, we cannot conclude that the photographs would have had the exculpatory value the petitioner claims.

Further, the photographic evidence could have actually been used by the state to damage the petitioner's defense at the criminal trial. At the criminal trial, the petitioner's trial counsel called two witnesses, James Henry, Jr., and James Henry, Sr., who testified that from their office across the street from the scene of the

crime, they observed a tall black male shooting at the victim. James Henry, Jr., testified that the person he observed was a six feet, three inches to six feet, four inches tall, slim, black male. James Henry, Sr., testified that he saw a six feet, one inch to six feet, two inches tall, black male. At the habeas trial, Bernardi testified that had the photographs been available at the criminal trial, he would have used them to impeach the testimony of James Henry, Jr., and James Henry, Sr., as to whether they could accurately see the shooter's height and build. Bernardi testified that the evidence "backed up the state's [cross-examination] because they illustrated all the state's questions on [cross-examination] . . . which was that from the shack, that distance they had, there [were] too many obstacles to their view of the scene for them to be able to correctly assimilate the facts and then give a correct judgment as to height and build." On the basis of the foregoing, we conclude that the evidence provided through the photographs is not material. Accordingly, the petitioner's *Brady* claim fails.

The judgment is affirmed.

In this opinion the other judges concurred.