******************************************************

The "officially released" date that appears near the beginning of each opinion is the date the opinion will be published in the Connecticut Law Journal or the date it was released as a slip opinion. The operative date for the beginning of all time periods for filing postopinion motions and petitions for certification is the "officially released" date appearing in the opinion. In no event will any such motions be accepted before the "officially released" date.

All opinions are subject to modification and technical correction prior to official publication in the Connecticut Reports and Connecticut Appellate Reports. In the event of discrepancies between the electronic version of an opinion and the print version appearing in the Connecticut Law Journal and subsequently in the Connecticut Reports or Connecticut Appellate Reports, the latest print version is to be considered authoritative.

The syllabus and procedural history accompanying the opinion as it appears on the Commission on Official Legal Publications Electronic Bulletin Board Service and in the Connecticut Law Journal and bound volumes of official reports are copyrighted by the Secretary of the State, State of Connecticut, and may not be reproduced and distributed without the express written permission of the Commission on Official Legal Publications, Judicial Branch, State of Connecticut.

******************************************************

RANDALL BROWN *v.* COMMISSIONER
OF CORRECTION
(AC 37056)

DiPentima, C. J., and Keller and Mihalakos, Js.

*Argued September 18, 2015—officially released December 15, 2015*

(Appeal from Superior Court, judicial district of
Tolland, Mullins, J.)

*Patrick Paoletti*, with whom, on the brief, were *Grayson Colt Holmes* and *Stephanie M. O'Neil*, for the appellant (petitioner).

*Rita M. Shair*, senior assistant state's attorney, with whom, were *Tamara Grosso*, assistant state's attorney, and, on the brief, *Gail P. Hardy*, state's attorney, for the appellee (respondent).

*Opinion*

MIHALAKOS, J. The petitioner, Randall Brown, appeals following the judgment of the habeas court denying his amended petition for a writ of habeas corpus. On appeal, the petitioner claims that the habeas court erred when it found that his criminal trial counsel, Robert Meredith, did not render ineffective assistance of counsel by failing to fully investigate and call two potential alibi witnesses. We affirm the judgment of the habeas court.

The following facts, as set forth in the petitioner's direct appeal; see *State* v. *Brown*, 299 Conn. 640, 11 A.3d 663 (2011); and procedural history are relevant to our resolution of this appeal. On May 23, 2005, the petitioner, along with three others, Eddy Hall, Jr., Idris France, and Chijoke Jackson, attempted to rob the victim, Demarco Mitchell. Id., 644–45. After entering the victim's car, ostensibly to purchase crack cocaine, France pointed a gun at his head. Id., 645. The victim and France struggled for control of the gun; the victim then fled. Id. The petitioner chased the victim, who tripped and fell near the curb of 103–105 Colebrook Street in Hartford. Id., 646. The petitioner shot the victim in the head and drove away in a car driven by Jackson. Id.

The petitioner was arrested and charged with felony murder in violation of General Statutes § 53a-54c, murder in violation of General Statutes § 53a-54a (a), robbery in the first degree in violation of General Statutes §§ 53a-134 (a) (4) and 53a-8, attempt to commit robbery in the first degree in violation of General Statutes §§ 53a-49 (a) (2) and 53a-134 (a) (4), conspiracy to commit robbery in the first degree in violation of General Statutes §§ 53a-48 (a) and 53a-134 (a) (4), carrying a pistol or revolver without a permit in violation of General Statutes § 29-35 (a) and criminal possession of a firearm in violation of General Statutes § 53a-217 (a) (1). Id., 643. Following a jury trial, the petitioner was convicted on all seven counts and sentenced to "a total effective term of fifty-five years incarceration." Id., 646.

Our Supreme Court affirmed the conviction on direct appeal. Id., 643. Thereafter, on August 16, 2013, the petitioner filed an amended petition for a writ of habeas corpus challenging his conviction on the ground of ineffective assistance of counsel. As relevant to the present appeal, he claimed that Meredith was ineffective in failing to investigate and present the testimony of Tonya Horne and Pasquale Sanseverino, which he claimed would have established an alibi for him at the time of the murder.[1] Following trial, the habeas court denied the petition. Thereafter, the petitioner sought certification to appeal from the denial of his petition for writ of habeas corpus, which the habeas court granted. On appeal, the petitioner claims that the habeas court

improperly found that Meredith was not ineffective in failing to further investigate and call Horne and Sanseverino as alibi witnesses. Additional facts will be set forth as necessary.

We begin by setting forth the applicable standard of review and the law governing ineffective assistance of counsel claims. "The habeas court is afforded broad discretion in making its factual findings, and those findings will not be disturbed unless they are clearly erroneous. . . . Historical facts constitute a recital of external events and the credibility of their narrators. . . . Accordingly, [t]he habeas judge, as the trier of facts, is the sole arbiter of the credibility of witnesses and the weight to be given to their testimony. . . . The application of the habeas court's factual findings to the pertinent legal standard, however, presents a mixed question of law and fact, which is subject to plenary review." (Citations omitted; internal quotation marks omitted.) *Anderson* v. *Commissioner of Correction*, 313 Conn. 360, 375, 98 A.3d 23 (2014), cert. denied sub nom. *Anderson* v. *Semple*,      U.S.    , 135 S. Ct. 1453, 191 L. Ed. 2d 403 (2015).

"[A] criminal defendant is constitutionally entitled to adequate and effective assistance of counsel at all critical stages of criminal proceedings. *Strickland* v. *Washington*, [466 U.S. 668, 686, 104 S. Ct. 2052, 80 L. Ed. 2d 674 (1984)]. This right arises under the sixth and fourteenth amendments to the United States constitution and article first, § 8, of the Connecticut constitution. . . . As enunciated in *Strickland* v. *Washington*, supra, 687, this court has stated: It is axiomatic that the right to counsel is the right to the effective assistance of counsel. . . . A claim of ineffective assistance of counsel consists of two components: a performance prong and a prejudice prong. To satisfy the performance prong . . . the petitioner must demonstrate that his attorney's representation was not reasonably competent or within the range of competence displayed by lawyers with ordinary training and skill in the criminal law. . . . To satisfy the prejudice prong, a claimant must demonstrate that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. . . . The claim will succeed only if both prongs are satisfied." (Internal quotation marks omitted.) *Gaines* v. *Commissioner of Correction*, 306 Conn. 664, 677–78, 51 A.3d 948 (2012).

I

We first consider whether the habeas court properly concluded that Meredith was not ineffective in failing to investigate Horne further. The petitioner argues that Horne's testimony that she went to Action Auto Center (Action Auto)[2] with the petitioner on May 23, 2005, and then spent the entire night with him would have accounted for his location at the time of the murder. He asserts that Meredith and Meredith's investigator,

Jennifer Lee, should have investigated Horne further because her testimony could have provided the petitioner with an alibi. The respondent, the Commissioner of Correction, contends that Meredith's decision not to further investigate Horne was reasonable because her testimony regarding Action Auto would not account for the petitioner's location when the murder occurred. Further, there was a discrepancy between when the petitioner said he and Horne were at Action Auto and when Horne said they were there. Finally, the respondent argues that Meredith could have determined that as the petitioner's girlfriend, Horne would lack credibility. We agree with the respondent.

The following additional facts are relevant to our resolution of this claim. The petitioner testified at the habeas trial that from their first meeting, he told Meredith he was not present at the time of the murder, but rather was at Action Auto with Horne. He maintained that Horne would confirm this and that his brother would help Meredith to get in contact with the people at Action Auto. The petitioner testified that he provided Meredith with contact information for Horne and his brother. He did not testify, until asked by his habeas attorney, that he told Meredith that Horne was with him the entire time; moreover, he testified in an ambiguous manner, such that it is unclear whether he told Meredith that Horne was with him the entire time he was at Action Auto, or for the rest of the night.[3]

The petitioner further testified regarding what he did at Action Auto and for the rest of the night. When he arrived, it was dark and Action Auto was closed, although there were still some people present. He knocked on the door and a man, whom he identified at the habeas trial as Sanseverino, opened the door for him. The petitioner purchased an amplifier for his car and received a receipt.[4] He testified that he left the amplifier at his mother's house, went to get Chinese food, and then went to Horne's house. It was there that he received a telephone call concerning the Colebrook Street shooting; he then called his mother, who lived four or five blocks from Colebrook Street, to make sure that neither she nor his brother had been hurt.

Meredith testified regarding his conversations with the petitioner and his investigation into the potential for an alibi defense based on the testimony of Sanseverino and Horne. He testified that at their first meeting, the petitioner stated that he had not committed the crime and he was at Action Auto at 8:55 p.m., the time at which the police received the 911 call about the murder. The petitioner further informed Meredith that the store closed at 9 p.m., and that he was ushered out of the store quickly because it was closing. The petitioner told Meredith that both "Pasquale," whose last name he did not know, and Horne were with him. Meredith requested that Lee verify the alibi that the

petitioner was at Action Auto at 9 p.m., went to his mother's house, and then spent the night with Horne. Meredith also testified that Lee interviewed Horne.

Lee testified regarding her interview with Horne, whom she understood to be the petitioner's girlfriend. The interview was by telephone; Horne confirmed that she was with the petitioner to procure speakers[5] at Action Auto on May 23, 2005. Lee's notes, which were submitted into evidence at the habeas trial, indicated that the petitioner and Horne were at Action Auto at around sundown, where they met an individual named Pasquale. They stayed for fifteen to twenty minutes, then took the amplifier to the petitioner's mother's house. Horne also testified at the habeas trial, but stated that she did not remember speaking to Lee.[6]

Meredith testified that following her investigation, Lee provided him with her notes. On the basis of Lee's notes, Meredith decided not to investigate Horne further as an alibi witness; he explained his decision in his habeas testimony. He noted that according to Lee's notes Horne said she and the petitioner arrived at Action Auto as it was getting dark or about to get dark. Meredith testified: "[T]hat was a critical piece of information because what that told me when I put two and two together is that, at best, Tonya Horne was at Action Auto at 8:12. That's inconsistent with the alibi that [the petitioner] told me because he said he was at Action Auto at 9. She said she was there for about twenty minutes when it was just about getting dark. So if you add that up, give her the benefit of the doubt, then we're at 8:12, the sun's setting,[7] she's at Action Auto for twenty minutes. That brings us to 8:32." Meredith maintained that this left the petitioner with ample time to drive from the Berlin Turnpike, where Action Auto was located, to the location of the crime by 8:55 p.m. He then explained his decision not to call Horne as an alibi witness: "[I]f anyone did any investigation and she were to testify at trial and said she was there for about twenty minutes and upon cross-examination she's not gonna be a good alibi witness because the alibi is not— based on her testimony, the alibi—based on those notes, what her anticipated testimony would be, she wouldn't be a good alibi witness because essentially she doesn't provide the alibi that [the petitioner] was at Action Auto at the time of the crime, 8:55." Meredith did not recall whether the notes said that Horne was with the petitioner for the entire night. Meredith also testified that while the petitioner maintained his claim that he was at Action Auto, just prior to trial the petitioner told Meredith he was on Colebrook Street at the time of the incident.

In its memorandum of decision, the habeas court found that Meredith "conducted a reasonable investigation into the information provided by Horne, and adequately explained why he chose not to call her to testify

at trial." The habeas court found that Meredith's conduct did not constitute deficient performance and that the petitioner had failed to establish that he was prejudiced by Meredith's performance. We agree.

"[A] court deciding an actual ineffectiveness claim must judge the reasonableness of counsel's challenged conduct on the facts of the particular case, viewed as of the time of counsel's conduct. . . . At the same time, the court should recognize that counsel is strongly presumed to have rendered adequate assistance and made all significant decisions in the exercise of reasonable professional judgment." (Internal quotation marks omitted.) *Gaines* v. *Commissioner of Correction*, supra, 306 Conn. 679–80. "The reasonableness of counsel's actions may be determined or substantially influenced by the [petitioner's] own statements or actions. Counsel's actions are usually based, quite properly, on informed strategic choices made by the [petitioner] and on information supplied by the [petitioner]. . . . [W]hen a defendant has given counsel reason to believe that pursuing certain investigations would be fruitless or even harmful, counsel's failure to pursue those investigations may not later be challenged as unreasonable." Id., 681. "[O]ur habeas corpus jurisprudence reveals several scenarios in which courts will not second-guess defense counsel's decision not to investigate or call certain witnesses or to investigate potential defenses, such as when . . . counsel learns of the substance of the witness' testimony and determines that calling that witness is unnecessary or potentially harmful to the case . . . ." (Footnote omitted.) Id., 681–82.

The failure to investigate a potential alibi may provide grounds for granting a habeas petition, depending on the potential reliability of the alibi and the reasonableness of counsel's decision not to investigate it. See id., 666 (granting petition that claimed failure to investigate alibi witness), but see *Llera* v. *Commissioner of Correction*, 156 Conn. App. 421, 430, 114 A.3d 178 (denying petition that claimed insufficient investigation of alibi witness), cert. denied, 317 Conn. 907, 114 A.3d 1222 (2015). "Defense counsel will be deemed ineffective only when it is shown that a defendant has informed his attorney of the existence of the witness and that the attorney, without a reasonable investigation and without adequate explanation, failed to call the witness at trial." (Internal quotation marks omitted.) *Gaines* v. *Commissioner of Correction*, supra, 681.

In considering the performance prong of *Strickland*, the habeas court must focus on the evidence regarding what Meredith knew when he made the decision, rather than on what Horne testified to at the habeas trial but did not testify that she related to Lee or Meredith. See *Gaines* v. *Commissioner of Correction*, supra, 306 Conn. 679–80 (reasonableness of counsel's conduct viewed as of time of counsel's conduct). The petitioner

claims that Meredith knew or should have known two ways Horne could have provided the petitioner with an alibi. First, she could have demonstrated that she and the petitioner were at Action Auto at the time of the murder. Second, she could have demonstrated that she and the petitioner were together for the rest of the night. We disagree and conclude that the habeas court properly determined that Meredith's performance was not deficient due to his failure to investigate Horne further.

With respect to the petitioner's claim that Horne would have demonstrated that she and the petitioner were at Action Auto at the time of the murder, the habeas court credited Meredith's calculations that there was sufficient time between when the petitioner and Horne would have left Action Auto and when the murder occurred for the petitioner to get to the murder scene. We agree with the habeas court's factual determination on this issue, especially given that Meredith's calculations were premised on the latest possible time that the petitioner and Horne could have left Action Auto. Because Horne's statement to Lee that it was "getting dark" is not a precise time on which to predicate an alibi, it was quite possible that Horne's testimony would have indicated that they left Action Auto significantly earlier than the 8:32 p.m. time that Meredith indicated was the latest possible time they could have left.

We next consider whether Meredith, after concluding that Horne's testimony regarding the petitioner's presence at Action Auto would not provide the alibi the petitioner had claimed it would, should have investigated further the possibility that Horne could provide an alibi by testifying that she and the petitioner were together for the entire night. Even in his habeas testimony, the petitioner focused on Action Auto, and made only one ambiguous reference regarding being with Horne the entire time after he was prompted by his habeas attorney.[8] The investigation request written by Meredith directed Lee to verify the petitioner's alibi that he was at Action Auto at 9 p.m. on the night of the murder; it also briefly noted the petitioner's statement that he brought the amplifier to his mother's house and then spent the night at Horne's house. According to Lee's notes, Horne stated that after leaving Action Auto, she and the petitioner dropped the amplifier off at the petitioner's mother's house; the notes do not say whether Horne mentioned anything about being with him for the rest of the night. According to the petitioner's habeas testimony, his mother's house was approximately four or five blocks from Colebrook Street, where the murder occurred. Although Meredith could have investigated further whether Horne could provide an alibi for the rest of the night, he testified that he was worried about setting up an alibi that the jury would easily dismiss. Instead, Meredith chose to focus on the

weaknesses in the state's case.

We agree with the habeas court that Meredith's decision to focus on the weaknesses in the state's case was a valid trial strategy. In the context in which Horne was suggested as a witness, and given what Meredith knew at the time, the habeas court properly determined that the petitioner failed to demonstrate that Meredith's performance was deficient. The petitioner has not met his burden of demonstrating that Meredith's "representation was not reasonably competent or within the range of competence displayed by lawyers with ordinary training and skill in the criminal law." (Internal quotation marks omitted.) *Gaines* v. *Commissioner of Correction*, supra, 306 Conn. 678.

Even if Meredith's performance was deficient, however, the petitioner nonetheless has also failed to prove that he was prejudiced by Meredith's failure to call Horne as a witness at the petitioner's criminal trial. The petitioner asserts that Horne could have presented a valuable alternative to the prosecution's version of the murder by providing the petitioner with an alibi, and that this alibi would have been valuable whether the jury concluded that the petitioner was at Action Auto or elsewhere with Horne at the time of the murder. The petitioner contends that the issue of Horne's potential bias as the petitioner's girlfriend was not raised at the habeas trial and her testimony at the petitioner's criminal trial would have created a reasonable probability that the outcome of the proceedings would have been different. The respondent claims that the inconsistency between Horne's statements and the petitioner's testimony demonstrated how weak her testimony would be, and that her testimony could not have made a difference to the state's strong case against the petitioner.

To prevail on the prejudice prong of a claim of ineffectiveness of counsel, the petitioner "must show that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." *Strickland* v. *Washington*, supra, 466 U.S. 694. "[T]he question is whether there is a reasonable probability that, absent the [alleged] errors, the fact finder would have had a reasonable doubt respecting guilt." Id., 695. "In making this determination, a court hearing an ineffectiveness claim must consider the totality of the evidence before the judge or the jury. . . . Some errors will have had a pervasive effect on the inferences to be drawn from the evidence, altering the entire evidentiary picture, and some will have had an isolated, trivial effect. Moreover, a verdict or conclusion only weakly supported by the record is more likely to have been affected by errors than one with overwhelming record support." Id., 695–96. "This court does not retry the case or evaluate the credibility of the wit-

nesses. . . . Rather, we must defer to the [trier of fact's] assessment of the credibility of the witnesses based on its firsthand observation of their conduct, demeanor and attitude." (Internal quotation marks omitted.) *Greene* v. *Commissioner of Correction*, 96 Conn. App. 854, 857, 902 A.2d 701, cert. denied, 280 Conn. 916, 908 A.2d 536 (2006).

The following additional facts are relevant to our resolution of this claim. Horne testified at the habeas trial that she and the petitioner went to Action Auto to buy an amplifier, although she could not testify as to the time. Horne further testified that, after they dropped the amplifier off at the petitioner's mother's house, they rode around for a little while, and when they "got home," the petitioner received a call about the shooting. As previously stated, Meredith also testified that while the petitioner maintained his claim that he was at Action Auto, just prior to trial the petitioner stated to Meredith that he was on Colebrook Street at the time of the incident.

The habeas court determined that the petitioner had failed to meet his burden of establishing that there was a reasonable probability that the outcome of the proceeding would have been different had Horne been called to testify at the petitioner's criminal trial. On the basis of our review of the record, we agree with the habeas court that there was not a reasonable probability that Horne's testimony would have altered the outcome of the trial. Horne's habeas testimony suggests that she could have testified that at the time of the murder, she and the petitioner were riding around together in the vicinity of Colebrook Street. The petitioner's contradictory statements regarding whether he was on Colebrook Street create doubt as to the credibility of his claim regarding Horne's effectiveness as a witness. In contrast, at the criminal trial the petitioner was identified by three separate eyewitnesses. In addition, one of the witnesses, Hall, testified that the petitioner told him "to say that [the petitioner] wasn't there the night of the shooting."[9]

Although two of the eyewitnesses were coconspirators who told conflicting stories, the third was the victim's half-brother, Devon Roberts. Roberts and Jackson stated that they saw the petitioner shoot the victim. Also, Hall testified that the petitioner stood over him with a gun, then ran toward the victim. Hall then heard gunshots, but did not see the petitioner shoot the victim.

The petitioner claims that each eyewitness lacked credibility. The petitioner notes that Jackson and Hall presented conflicting testimony regarding a number of details, including what the petitioner was wearing. He also claims that Roberts' testimony lacked credibility because Roberts informed the police about what he saw two months after the shooting; he testified at trial

that he fled the scene because he had an outstanding warrant for his arrest. This evidence was before the jury.

Although there were weaknesses in the state's case, the evidence presented at the habeas trial does not demonstrate a reasonable probability that, but for Meredith's decision not to call Horne as a witness, the result of the proceeding would have been different. The habeas court, therefore, properly concluded that the petitioner had failed to demonstrate that Meredith's decision not to interview Horne further or to call her as a witness at trial constituted ineffective assistance of counsel.

## II

We next consider the petitioner's claim that he was prejudiced by Meredith's failure to call Sanseverino as a witness.[10] The petitioner argues that Sanseverino was a disinterested witness who could have testified that the petitioner was at Action Auto at the time of the murder and who could have bolstered Horne's credibility. The respondent asserts that the timing issues make it clear that, even if the jury believed Sanseverino, his testimony would not provide an alibi for the petitioner. The following additional facts are relevant to our resolution of this claim.

Lee testified that she obtained the receipt for the amplifier the petitioner purchased at Action Auto and took pictures of what she termed the "speaker box" at the petitioner's mother's house. The petitioner identified the box as the amplifier box, which contained both speakers and an amplifier. In addition, Lee spoke to another employee at Action Auto, who confirmed that Sanseverino frequently sold audio equipment at Action Auto, although he was not employed there.

Sanseverino testified at the habeas trial regarding his encounter with the petitioner. He was working at Action Auto on the Berlin Turnpike in May of 2005. Sanseverino stated that in May, 2005, Action Auto closed at 6 p.m. on Sunday; 7 p.m. on Monday, Tuesday, and Wednesday; and 8 p.m. on Thursday, Friday, and Saturday, but he did not know what day of the week it was when the petitioner came to the store. He saw the petitioner knocking on the door after the store was closed. He then sold him an amplifier and gave him a receipt. When presented with the petitioner's copy of the receipt, he identified it as the same, confirming the model number of the amplifier he sold to the petitioner. Sanseverino also recalled that after the petitioner bought the amplifier, they went out to the petitioner's car, where Sanseverino saw a female passenger in the car. He testified that the process took thirty to forty-five minutes, that when the petitioner left depended on whether they closed at 7 p.m. or 8 p.m. that day, and that the petitioner could have left at 8:30 p.m. or 8:45 p.m. He identified the receipt as corresponding to the amplifier the petitioner

purchased, and noted it stated the date as May 23, 2005.

The habeas court indicated that May 23, 2005, the day the murder occurred, was a Monday; it then found that "[t]he testimony by Sanseverino regarding the petitioner's presence at Action Auto . . . approximately thirty minutes after the store closed at 7 p.m. directly contradicts the petitioner's testimony that he arrived at the store around 9 p.m. and stayed for an hour to an hour and a half, and does not provide a strong alibi defense for the petitioner based on the time of the victim's murder." It therefore determined that the petitioner had not shown a reasonable probability that the outcome of the proceedings would have been different had Meredith called Sanseverino, and that it need not determine whether Meredith's conduct constituted deficient performance. We likewise conclude that the petitioner failed to meet his burden of establishing that he was prejudiced by Meredith's performance.

The timing issues cited by the habeas court demonstrate that Sanseverino's testimony would not have been any more helpful than Horne's regarding the petitioner's presence at Action Auto.[11] The habeas court properly concluded that Sanseverino's testimony did not demonstrate a reasonable probability that, but for Sanseverino's absence, the result of the petitioner's criminal trial would have been different.

The judgment is affirmed.

In this opinion the other judges concurred.

[1] The petitioner also alleged ineffective assistance regarding Meredith's failure to call additional witnesses to establish a third party culpability defense and to conduct further pretrial investigations regarding whether the petitioner was ever incarcerated with Hall, such that Hall could have heard inculpatory statements made by the petitioner. He has not pursued these claims on appeal, and, therefore, they are deemed abandoned. See *Atkinson* v. *Commissioner of Correction*, 125 Conn. App. 632, 636 n.5, 9 A.3d 407 (2010), cert. denied, 300 Conn. 919, 14 A.3d 1006 (2011).

[2] Witnesses and the parties vary regarding whether the name of this store is Action Auto, Action Audio, Action Auto Center, or Action Auto Sound. For the purposes of this opinion, we will refer to it as Action Auto.

[3] The petitioner's attorney examined him as follows:

"Q. Did you tell him that you were with Tonya Horne?

"A. Yes.

"Q. Did you tell him that you went to Action [Auto]?

"A. Yes.

"Q. Did you tell him that afterwards—that Tonya Horne was with you the entire time?

"A. Yes."

[4] The receipt for the amplifier was admitted as an exhibit at the habeas trial, was signed by Sanseverino and bore the date of May 23, 2005.

[5] The petitioner later clarified that the amplifier box contained speakers and an amplifier; this explains the inconsistency in how the parties referred to it.

[6] As will be discussed in the following colloquy, Horne testified at the habeas trial regarding the night of the murder, but she said she did not remember Lee; she testified at the habeas trial that she remembered speaking to a lawyer as follows:

"Q. Okay. And when [the petitioner] got an attorney, did you ever speak to the attorney?

"A. Mm-hmm.

"Q. And what did you tell the attorney?

"A. That I was with [the petitioner].

"Q. Okay. Did you explain why that was important?

"A. I didn't—I don't remember me explaining it.

"Q. Okay. But you essentially told the attorney that you were with [the petitioner] when?

"A. The day of the murder.

"Q. Okay. Did you tell the attorney—or do you remember a conversation about Action Auto?

"A. I'm not for sure."

[7] Meredith testified that Lee printed out a weather report for the night of the murder, which stated the time of sunset. He kept a copy of this weather report, which was submitted into evidence.

[8] See footnote 3 of this opinion.

[9] Hall testified, outside of the jury's presence, that this conversation occurred at "Walker," i.e., MacDougall-Walker Correctional Institution. In the habeas trial, the petitioner claimed he was not incarcerated at MacDougall-Walker, but at Cheshire Correctional Institution. The records specialist for the Department of Correction, Michelle Deveau, testified at the habeas trial that inmates at different institutions may be transported to a central location prior to court appearances. The habeas court found that Meredith was not ineffective in failing to further investigate this issue, and the petitioner does not raise it on appeal.

[10] The habeas court did not determine whether Meredith's failure to investigate Sanseverino constituted deficient performance. "If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice . . . that course should be followed." (Internal quotation marks omitted.) *Smith* v. *Commissioner of Corrections*, 141 Conn. App. 626, 632, 62 A.3d 554, cert. denied, 308 Conn. 947, 67 A.3d 290 (2013).

[11] The petitioner also argues that Sanseverino's testimony could have bolstered Horne's testimony that the petitioner was with her for the rest of the night. Although Sanseverino's testimony could have bolstered Horne's testimony about the petitioner being at Action Auto, it would have shed little light on the veracity of Horne's testimony regarding what followed. Even with Sanseverino's testimony, Horne's testimony would not have been sufficient to create a reasonable probability of a different result in the petitioner's criminal trial.